# United States Court of Appeals
## For the First Circuit

No. 02-2213

THOMAS F. STEELE,

Petitioner, Appellant,

v.

ROBERT MURPHY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Willie J. Davis, with whom Davis, Robinson & White, LLP, was on brief, for appellant.
Annette C. Benedetto, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.

April 12, 2004

**TORRUELLA**, **Circuit Judge**.    Thomas Steele, petitioner-appellant, appeals the district court's denial of his petition for a writ of habeas corpus.  After careful review, we affirm.

## I.  **Background**

Thomas Steele was indicted by a grand jury for seven counts of aggravated rape, two counts of kidnaping, two counts of assault and battery, five counts of assault and battery with a dangerous weapon, and armed robbery.  On October 14, 1982, Steele pleaded guilty to these charges.  The plea was accepted and Steele was sentenced to a term of imprisonment of not less than twelve years and not more than thirty years.

In mid-1984, Steele had an opportunity to be moved to a lower security facility.  Before the move took place, the Commonwealth of Massachusetts ("Commonwealth") had Steele evaluated by a psychologist.  See Mass. Gen. Laws ch. 123A, § 6.  The psychologist determined that Steele might be a sexually dangerous person.  On January 24, 1985, the Commonwealth filed a motion to have Steele committed to the Treatment Center for Sexually Dangerous Persons for a sixty-day evaluation.  The motion was granted.  On May 17, 1985, the Commonwealth petitioned to have Steele committed to the Treatment Center from one day to life. Steele was so committed.

In May 1992, Steele filed a motion in a Commonwealth Superior Court requesting a trial, because the original trial judge

had failed to inform him that, as a result of his plea, he could be committed from one day to life as a sexually dangerous person. The Superior Court found that Steele had not been informed that he could be classified as a sexually dangerous person but held that the failure to inform Steele of a possible life-long detention did not merit a withdrawal of his plea.

On appeal, the Massachusetts Appeals Court affirmed the denial of the motion for a new trial. Commonwealth v. Steele, 715 N.E.2d 477 (Mass. App. Ct. 1999). The Massachusetts Supreme Judicial court denied Steele's application for further review. Commonwealth v. Steele, 722 N.E.2d 977 (Mass. 1999).

Steele filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts arguing that the Commonwealth's failure to inform him of the consequences of the plea violated his due process rights under the Fourteenth Amendment of the United States Constitution and that his plea was not knowing and voluntary. Steele v. Murphy, No. 00-10563-MLW (D. Mass. Aug 26, 2002). The district court denied his petition. Id. Steele appeals.

## II. Analysis

When "reviewing a judgment on a petition for a writ of habeas corpus, this Court examines the legal conclusions of the district court . . . de novo." Norton v. Spencer, 351 F.3d 1, 4 (1st Cir. 2003) (citing Almanzar v. Maloney, 281 F.3d 300, 303 (1st

-3-

Cir. 2002)).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1)-(2),

> prohibits a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Id. (quoting Williams v. Taylor, 529 U.S. 362, 399 (2000)).  As the Supreme Court clarified, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Id. at 6 (citations and quotations omitted).  There is no Supreme Court case involving "materially indistinguishable facts" that is contrary to the outcome in this case.  Rather, the debate centers on whether the state court determination was an "unreasonable application" of clearly established federal law established by the Supreme Court.

The Supreme Court has not addressed whether a defendant has a constitutional right to be informed, before pleading guilty, of the possibility of being deemed a sexually dangerous person. Steele contends that the Commonwealth's decision denying his motion for a new trial was contrary to clearly established Supreme Court precedent in Brady v. United States, 397 U.S. 742, 748 (1970).

-4-

When Steele agreed to plead guilty, he agreed to give up several constitutional rights.  See Boykin v. Alabama, 395 U.S. 238, 243 (1969) (noting that a defendant, by entering a guilty plea, waives many constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers).  In Brady, the Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  Brady, 397 U.S. at 748.  Steele contends that he did not waive his constitutional rights voluntarily or knowingly because he was not advised of a consequence of pleading guilty, namely, the possibility of being committed from one day to life as a sexually dangerous person.

Although a defendant must be informed of the "likely consequences" of pleading guilty, he does not need to be informed of all the possible consequences of a guilty plea.  Indeed, a defendant need only be "fully aware of the direct consequences" of such a plea.  Brady, 397 U.S. at 755 (citation omitted); see also United States v. Sambro, 454 F.2d 918, 922 (D.C. Cir. 1971) (en banc) (per curiam) (stating that "[w]e presume that the Supreme Court meant what it said when it used the word 'direct'; by doing so, it excluded collateral consequences") (emphasis in original).

-5-

The distinction between direct and collateral consequences of a plea "turns on whether the consequence represents a definite, immediate, and largely automatic effect on the range of a defendant's punishment." United States v. Bouthot, 878 F.2d 1506, 1511 (1st Cir. 1989) (internal quotations and citations omitted).[1]

We believe that the possibility of commitment for life as a sexually dangerous person is a collateral consequence of pleading guilty. As a result, the failure to inform Steele about the possibility of being classified as a sexually dangerous person did not violate clearly established Supreme Court precedent established in Brady. See, e.g., George v. Black, 732 F.2d 108, 110 (8th Cir. 1984) (possibility that convicted sex offender could be confined

---

[1] See, e.g., United States v. Morse, 36 F.3d 1070, 1072 (11th Cir. 1994)(potential loss of federal benefits was a collateral consequence); King v. Dutton, 17 F.3d 151, 153 (6th Cir. 1994) (use of murder conviction as aggravating circumstance in sentencing for unrelated murder charge was collateral consequence); United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir. 1991) (effect of conviction on sentencing for later offense under career offender law was a collateral consequence); United States v. Campusano, 947 F.2d 1, 5 (1st Cir. 1991) (ability to use state court conviction against defendant in subsequent federal prosecution was collateral consequence of state court guilty plea); United States v. Russell, 686 F.2d 35, 39 (D.C. Cir. 1982) (deportation was collateral consequence); Moore v. Hinton, 513 F.2d 781, 782-83 (5th Cir. 1975) (suspension of defendant's driver's license was collateral consequence of defendant's guilty plea); Wall v. United States, 500 F.2d 38, 39 (10th Cir. 1974) (possibility of consecutive sentences was collateral consequence). But see United States v. Harris, 534 F.2d 141, 142 (9th Cir. 1976) (mandatory special parole term was a direct consequence); Paige v. United States, 443 F.2d 781, 782-83 (4th Cir. 1971) (non-eligibility for parole was direct consequence of plea).

-6-

pursuant to civil commitment proceedings after expiration of criminal sentence was collateral consequence); Cuthrell v. Dir., Patuxent Inst., 475 F.2d 1364, 1367 (4th Cir. 1973)(possibility of civil commitment was collateral consequence).

Rather than being labeled a sexually dangerous person as a direct result of pleading guilty to the crimes Steele committed, the Massachusetts law in effect when Steele was deemed a sexually dangerous person required many steps before a court could conclude that Steele was sexually dangerous. These steps were followed in Steele's case. First, a statutorily designated official concluded that Steele appeared to be a sexually dangerous person. Mass. Gen. Laws ch. 123A, § 6. Upon doing so, a psychiatrist, Dr. Robert Moore, administered a psychiatric examination. Id. Dr. Moore concluded that Steele might be a sexually dangerous person. Upon learning of Dr. Moore's conclusions, the Superintendent of the North Central Correctional Institution at Gardner submitted a motion to the Massachusetts Superior Court to commit Steele to the Massachusetts Treatment Center at Bridgewater for a sixty-day evaluation. Id. The motion was granted. Steele was examined by two more psychologists while at the Treatment Center and both concluded that Steele was a sexually dangerous person. The Commonwealth then filed a petition seeking to commit Steele to the Treatment Center as a sexually dangerous person. A full evidentiary hearing was held for the court to determine if the

prisoner was sexually dangerous. <u>Id.</u> at § 5. The court determined that Steele was sexually dangerous and committed him to the Treatment Center from one day to life.

Steele concedes that, in some situations, being committed as a sexually dangerous person is not an automatic result of pleading guilty. Still, he argues that, in his situation, being committed was inevitable, considering that he pleaded guilty to seven counts of aggravated rape, assault, and kidnaping. We disagree. Although the charges against Steele perhaps made him a likely candidate for being classified a sexually dangerous person, his classification as one was not a direct, immediate, or largely automatic result of pleading guilty. <u>See</u> <u>George</u>, 732 F.2d at 110-11 (stating that while commitment proceedings are mandatory, commitment is not); <u>Cuthrell</u>, 475 F.2d at 1366 (holding that commitment is a collateral consequence of a plea when commitment does not depend directly on the defendant's plea but on a subsequent, independent civil trial). The process that led to Steele's being committed to the Treatment Center involved three psychological evaluations, a sixty-day observation period, and two court hearings. Had the psychiatric evaluations not found Steele to be sexually dangerous, or if Steele had convinced the court at the full evidentiary hearing that he was not a sexually dangerous person, he may not have been committed. The many possible outcomes that could have resulted in Steele's not being classified as

sexually dangerous further illustrate that commitment as a sexually dangerous person is a collateral, rather than direct, consequence of pleading guilty.

An argument could be made that Steele's plea was involuntary because he was not informed that a statutorily designated official could request that Steele undergo a psychiatric evaluation if Steele "appear[ed]" to be sexually dangerous.  See Mass. Gen. Laws ch. 123A, § 6.[2]  Such an argument is unconvincing for several reasons.  First, the fact that a prison official may believe that a prisoner appears to be sexually dangerous does not have a "definite, immediate, and largely automatic effect on the range of a defendant's punishment."  Bouthot, 878 F.2d at 1511 (internal quotations and citations omitted).  Second, as other circuits have held, a defendant does not need to be informed of all the possible consequences of a plea, regardless of whether there is a high probability that such a consequence will occur.  See, e.g., Russell, 686 F.2d at 39 (stating that deportation is a collateral consequence despite criminal convictions leading often, and

_____

[2]  This provision of Massachusetts law applied to any "prisoner under sentence in any jail."  If Steele's argument were valid, any prisoner sentenced to jail, from rapists to traffic violators, would have to be notified that they may be deemed a sexually dangerous person.  It should also be noted that Massachusetts Rule of Criminal Procedure 12(c)(3)(B) requires that a defendant pleading guilty be informed "of any different or additional punishment based upon second offense or sexually dangerous persons provision of the General Laws."  Failure to follow this state procedural rule does not affect our analysis of Steele's federal constitutional claim.

sometimes automatically, to deportation proceeding); <u>Moore</u>, 513 F.2d at 782-83 (suspension of defendant's driver's license was collateral consequence of defendant's guilty plea despite guilty plea automatically leading to a license suspension hearing before another court).

## III. <u>Conclusion</u>

For the aforementioned reasons, the district court's denial of Steele's petition for a writ of habeas corpus is

**<u>Affirmed</u>**.