NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11825

COMMONWEALTH  vs.  JOSEPH L. ROBERTS.

Plymouth.     April 7, 2015. - July 30, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Sex Offender.  Practice, Criminal, Plea, Sentence, Waiver.  Due
    Process of Law, Plea.  Constitutional Law, Waiver of
    constitutional rights.



    Indictments found and returned in the Superior Court
Department on November 8, 2002.

    A motion to withdraw a plea of guilty and for a new trial,
filed on February 10, 2012, was heard by Raymond P. Veary, Jr.,
J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.
    Jeanne M. Kempthorne for the defendant.
    Jeffrey G. Harris, for William J. Sylvester, amicus curiae,
submitted a brief.


    CORDY, J.  In 2005, the defendant pleaded guilty to several

sexual offenses, including forcible rape, committed against

three children.  Neither his defense counsel nor the judge who accepted his guilty pleas informed the defendant that his sexual offense convictions could, pursuant to G. L. c. 123A, serve as a predicate for civil confinement as a sexually dangerous person for from one day to life.  Although each conviction of forcible rape of a child carried a maximum sentence of life in prison, by pleading guilty to them the defendant obtained a sentence of from not less than nine to not more than thirteen years in the State prison.

Subsequently, after learning of the possibility of a lifetime of civil confinement, the defendant moved to withdraw his guilty pleas.  A judge in the Superior Court allowed the defendant's motion on the ground that the failure of the plea judge to inform the defendant of possible civil commitment violated due process and Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 442 Mass. 1511 (2004) (rule 12).[1]  The fulcrum of the judge's decision was an analogy to Padilla v. Kentucky, 559 U.S. 356, 369 (2010), a case in which the United States Supreme Court held that the failure of counsel to advise a noncitizen that his or her guilty plea likely would lead to deportation

---

[1] In relevant part, Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 442 Mass. 1511 (2004) (rule 12), provided that a judge accepting a guilty plea "shall inform the defendant on the record, in open court . . . of any different or additional punishment based upon subsequent offense or sexually dangerous persons provisions of the General Laws, if applicable."

constituted ineffective assistance of counsel under the Sixth Amendment to the United States Constitution.

We conclude that the analogy to Padilla is inapt. Nonetheless, given the significant deprivation of liberty at stake, we also conclude that the defendant may withdraw his plea if he can establish a reasonable probability that he would not have pleaded guilty had he been informed by the judge of the possibility of future civil confinement as required by rule 12. Because the record is not fully developed on this point, we vacate the order allowing the defendant to withdraw his guilty pleas and remand the matter for further findings and rulings germane to the correct legal standard.[2]

1.  Background.  We summarize the material facts in the record, reserving certain details for the issues raised on appeal.  In November, 2002, the defendant was indicted on five counts of rape of a child under sixteen years of age by force, in violation of G. L. c. 265, § 22A; four counts of rape of a child under sixteen years of age, in violation of G. L. c. 265, § 23; four counts of indecent assault and battery of a child under fourteen years of age, in violation of G. L. c. 265, § 13B; and one count of assault and battery, in violation of G. L. c. 265, § 13A (a).  The indictments were premised on a

_____

[2] We acknowledge the amicus curiae brief submitted by William J. Sylvester.

series of sexual acts committed against three children over a period of six years.

According to the affidavits and other materials submitted in support of the defendant's motion to withdraw his guilty pleas, in April, 2003, he first met with the attorney whom he hired to represent him in defending against these charges. His attorney was frequently unreachable by telephone to discuss the case, missed several court dates, and did not meet with the defendant again until around January, 2005.[3] On February 1, 2005, the defendant met with the attorney for about five minutes in a hallway in the court house. The attorney advised him that he was not prepared to go to trial, that he had "brokered" a deal with the judge, and that the defendant had to plead guilty to get the deal. He did not advise the defendant that pleading guilty could serve as a predicate for his civil confinement as a sexually dangerous person pursuant to G. L. c. 123A.

The next day, the defendant pleaded guilty to each of the fourteen counts. A judge in the Superior Court (plea judge) conducted a colloquy in which she advised the defendant of several consequences of his pleas, but did not mention the possibility of civil confinement as a sexually dangerous person. The judge inquired whether the defendant was under the influence

---

[3] The attorney was publicly reprimanded by the Board of Bar Overseers in connection with his performance in this case.

of alcohol or drugs; the defendant stated that he had taken only prescribed medications and confirmed that he understood the consequences of his pleas. The judge accepted the pleas and sentenced the defendant to concurrent terms resulting in an aggregate sentence of not less than nine to not more than thirteen years in the State prison. The defendant was also sentenced to five years of probation, ordered to participate in sexual offender treatment, and notified of his obligation to register as a sexual offender.

Soon thereafter, the defendant had second thoughts about the sentences he received and contacted his attorney, who filed a motion to revoke and revise the sentences, which motion was denied. The defendant was then provided with appellate counsel by the Committee for Public Counsel Services (CPCS). Although civil confinement proceedings had not -- and have still not -- been commenced, the defendant learned of the possibility that he could be confined as a sexually dangerous person as a consequence of his convictions. The defendant requested that his appointed appellate counsel file a motion to withdraw his guilty pleas on the grounds that, inter alia, his plea counsel was ineffective and that he was never advised of the possibility of civil confinement as a consequence of his pleas. Appellate counsel declined to include these arguments in the motion because they detracted from what counsel viewed as the

defendant's strongest argument, which was that the defendant was not mentally competent at the time of his guilty pleas.  The defendant's motion to withdraw his pleas was denied without a hearing.  In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed, and we denied the defendant's application for further appellate review.  See Commonwealth v. Roberts, 73 Mass. App. Ct. 1116, S.C., 453 Mass. 1107 (2009).

Subsequently, in 2009, the defendant filed pro se a second motion to withdraw his guilty pleas, this time asserting the claims of ineffective assistance of counsel and the judge's failure to advise him of the possibility of civil confinement. The defendant was appointed new counsel and an evidentiary hearing was held on the defendant's motion.  A judge in the Superior Court (not the judge who accepted the guilty pleas) allowed the defendant's motion to withdraw his pleas on the ground that the plea judge's failure to advise the defendant of the possibility of civil confinement violated due process and rule 12.[4]  The motion judge did not address the defendant's ineffective assistance of counsel argument.  The Commonwealth

_____

[4] The plea judge retired prior to the defendant's first motion to withdraw his pleas, which was therefore decided by a different judge.  A third judge held the hearing on the defendant's second motion to withdraw his pleas, but retired prior to deciding it.  The fourth judge rendered his decision based on the hearing held by the third judge.

appealed, and we transferred the case to this court on our own motion.

2. Discussion. a. Waiver. "A postsentence motion to withdraw a plea is treated as a motion for a new trial." Commonwealth v. Berrios, 447 Mass. 701, 708 (2006), cert. denied, 550 U.S. 907 (2007), quoting Commonwealth v. Conaghan, 433 Mass. 105, 106 (2000). Any grounds for relief not raised by the defendant in his original or amended motion for a new trial are "waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001). "The rule of waiver 'applies equally to constitutional claims which could have been raised, but were not raised' on direct appeal or in a prior motion for a new trial." Commonwealth v. Watson, 409 Mass. 110, 112 (1991), quoting Commonwealth v. Deeran, 397 Mass. 136, 139 (1986). We have recommended that judges restrict the exercise of their discretion to review previously unraised claims to "those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." Id., quoting Fogarty v. Commonwealth, 406 Mass. 103, 107-108 (1989).

The Commonwealth contends that the motion judge abused his discretion by considering the new arguments contained in the

defendant's second motion to withdraw his guilty pleas.  We

disagree.  It was undisputed that the plea judge failed to

properly inform the defendant pursuant to rule 12 regarding the

possibility of a future civil confinement, and that plea counsel

had been reprimanded in connection with his representation of

the defendant in the underlying proceedings.[5]  The defendant

specifically requested that his appointed appellate counsel make

arguments regarding ineffective assistance of counsel and the

failure of the plea judge to advise him of possible civil

confinement.  When counsel declined to do so, the defendant

complained to CPCS and was told that he had to accept his

attorney's judgment or proceed without the assistance of CPCS.

Although the judge did not address the Commonwealth's

waiver argument in his decision, it strikes us as rather harsh

that a defendant -- who suffered from significant mental health

---

[5] The Commonwealth makes much of the defendant's failure to submit an affidavit from plea counsel stating that he did not advise the defendant of the possibility of civil confinement. However, the judge was entitled to consider the fact that plea counsel was incarcerated at the time of the second motion to withdraw his plea and, as a result, the defendant had difficulty communicating with him.  The motion judge, who was not the plea judge, was also entitled to consider the letter sent to the defendant by his plea counsel's attorney, indicating that a flood had destroyed certain files relating to the defendant's case.  Cf. Commonwealth v. Colon, 439 Mass. 519, 530 (2003) ("where the judge, the defendant, and the prosecutor could not remember the 1994 plea hearing, no weight should be given to the fact that the defendant's attorney from the 1994 hearing did not testify as to any recollection of the 1994 hearing").

conditions -- would be required to choose between being represented by appointed counsel and asserting a claim that affected substantially his liberty interest, particularly where that claim derived from deficiencies that were apparent in the record. See Commonwealth v. Pariseau, 466 Mass. 805, 808 (2014) (civil confinement implicates liberty interest and due process protections). Considering the unusual circumstances presented by this case, the judge did not abuse his discretion in considering the new arguments presented in the defendant's second motion to withdraw his pleas. See Commonwealth v. Cavanaugh, 371 Mass. 46, 56 (1976).

b. Failure to explain possibility of civil confinement. A judge has discretion to allow a defendant's motion to withdraw his guilty pleas "at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See Berrios, 447 Mass. at 708. As a matter of constitutional due process, "[j]ustice is not done, and a new trial is therefore warranted, where a defendant pleads guilty without an understanding of the proceedings." Commonwealth v. Nikas, 431 Mass. 453, 456 (2000). Absent such constitutional concerns, "a judge should only grant a postsentence motion to withdraw a plea if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth" (footnote omitted). Commonwealth v. DeMarco, 387

Mass. 481, 486 (1982).  Judges are to apply this standard
"rigorously."  Id. at 487.

Rule 12 describes the procedure for entering a guilty plea.
At the time of the defendant's plea, rule 12 (c) (3) (B)
provided that the judge accepting the plea "shall inform the
defendant on the record, in open court . . . where appropriate,
of the maximum possible sentence on the charge, and where
appropriate, the possibility of community parole supervision for
life;[6] of any different or additional punishment based upon
subsequent offense or sexually dangerous persons provisions of
the General Laws, if applicable; where applicable, that the
defendant may be required to register as a sex offender; and of
the mandatory minimum sentence, if any, on the charge" (emphasis
added).  The Reporters' Note to rule 12 offers valuable insight
into its intended application:

> "[I]f the defendant is subject to commitment as a sexually
> dangerous person, see G. L. c. 123A, the judge must include
> notice of that possibility prior to accepting the plea or
> admission.  This provision has been part of Rule 12 since
> its adoption, changing the practice that prevailed prior to
> 1979.  See Commonwealth v. Morrow, 363 Mass. 601, 606
> (1973) (being subject to the 'sexually dangerous person'
> provision 'is but one of many contingent consequences of
> being confined' after conviction, and therefore need not be

---

[6] Rule 12 has since been revised to remove the requirement
that judges inform defendants of the possibility of community
parole supervision for life pursuant to G. L. c. 127, § 133D
(c), which was held unconstitutional in Commonwealth v. Cole,
468 Mass. 294, 308 (2014).  See generally Mass. R. Crim. P. 12,
as appearing in 470 Mass. 1501 (2015).

explained to a defendant).  Since a 2004 amendment to G. L. c. 123A, § 12, makes a defendant subject to commitment as a sexually dangerous person despite the nature of the offense to which the defendant is pleading guilty, so long as the defendant has been convicted any time in the past of a designated sex offense, a warning of the possibility of commitment under c. 123A should be included as a matter of routine unless it is clear from the defendant's prior record that it is not relevant."

Reporters' Note to Rule 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1495 (LexisNexis 2014).[7]  It was the view of the motion judge in this case that the admonition set forth in the Reporters' Note anticipated the holding of the United States Supreme Court in Padilla v. Kentucky, 559 U.S. 356, 369 (2010) (failure to advise noncitizen that guilty plea

_____

[7] There is no specific statute that, like rule 12, requires a judge to inform a defendant pleading guilty to a sexual offense that he or she could be civilly confined as a sexually dangerous person as a collateral consequence of a guilty plea. Contrast G. L. c. 6, § 178E (d) ("Any court which accepts a plea for a sex offense shall inform the sex offender prior to acceptance and require the sex offender to acknowledge, in writing, that such plea may result in such sex offender being subject to [provisions regarding registration as a sex offender].  Failure to so inform the sex offender shall not be grounds to vacate or invalidate the plea"); G. L. c. 279, § 25 (d) ("prior to accepting a guilty plea for any qualifying offense listed in subsection [b], the court shall inform the defendant that a . . . plea of guilty for such an offense implicates the habitual offender statute and that upon . . . plea of guilty for the third or subsequent of said offenses: [1] the defendant may be imprisoned in the state prison for the maximum term provided by law for such third or subsequent offense; [2] no sentence may be reduced or suspended; and [3] the defendant may be ineligible for probation, parole, work release or furlough, or to receive any deduction in sentence for good conduct.  No otherwise valid plea . . . shall be vacated based upon the failure to give such warnings").

likely would result in deportation was constitutionally ineffective assistance of counsel). We do not share this view.[8]

Due process requires that "[a] 'plea is valid only when the defendant offers it voluntarily, with sufficient awareness of the relevant circumstances . . . and with the advice of competent counsel.'" Berrios, 447 Mass. at 708, quoting Brady v. United States, 397 U.S. 742, 748-749, 758 (1970). "Generally, under Massachusetts law, failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary." Commonwealth v. Shindell, 63 Mass. App. Ct. 503, 505 (2005). Cf. Steele v. Murphy, 365 F.3d 14, 17 (1st Cir.), cert. denied, 543 U.S. 893 (2004), quoting Brady, supra at 755 ("defendant need only be 'fully aware of the direct consequences' of such a plea"). In Morrow,

---

[8] The case of Padilla v. Kentucky, 559 U.S. 356 (2010), arose in a context very different from the circumstances described in the Reporters' Note and presented by this case. In Padilla, an attorney advised his noncitizen client that pleading guilty to certain drug charges would not have adverse immigration consequences. That advice was incorrect. Id. at 368. The defendant pleaded guilty and, as a consequence, was subjected to deportation proceedings. The United States Supreme Court concluded that the Sixth Amendment to the United States Constitution requires a criminal defense attorney to provide accurate advice regarding the near certain deportation consequences arising from a guilty plea. Id. at 368-369. Defense counsel's failure to provide such advice was, therefore, a "constitutional deficiency" that satisfied the first prong of the test for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984). Padilla, supra at 369.

363 Mass. at 606, we held that civil confinement was a contingent consequence of a conviction and that the failure to advise a defendant of such a possibility did not render his guilty plea constitutionally infirm. The adoption of rule 12 in 1980 was intended to modify judicial practice by broadening the scope of the duty to advise a criminal defendant of the implications of a guilty plea, but that did not transform civil confinement into a direct consequence of a conviction for constitutional purposes. See Reporters' Note to Rule 12, supra at 169, quoting Commonwealth v. Nolan, 19 Mass. App. Ct. 491, 495 (1985) ("not every omission of a particular from the protocol of the rule . . . entitles a defendant at some later stage to negate his plea and claim a trial"). See also Steele, 365 F.3d at 17 ("possibility of confinement for life as a sexually dangerous person [under G. L. c. 123A] is a collateral consequence of pleading guilty"). Nor did the Padilla case effect any such transformation.[9]

---

[9] The defendant contends that the Padilla case cast doubt on the continued viability of Morrow, pointing to the Supreme Court's observation that deportation's close connection to the criminal process made it "uniquely difficult to classify as either a direct or a collateral consequence." Padilla, 559 U.S. at 366. However, at the core of the Court's analysis in Padilla was a series of changes in Federal immigration law that eliminated the authority of the Attorney General and sentencing judges to grant discretionary relief from deportation. Id. at 361-362. As a result of these changes in the law, the defendant's decision to follow his attorney's incorrect advice

Civil confinement as a sexually dangerous person, although tangentially connected to the criminal process, is not a "virtually mandatory" consequence of a sexual offense conviction. Contrast Padilla, 559 U.S. at 359. Conviction of a sexual offense is but one element of the government's case. See generally Commonwealth v. Fay, 467 Mass. 574, 580, cert. denied, 135 S. Ct. 150 (2014). A person may be confined as a sexually dangerous person only if, in addition to being convicted of a sexual offense, the person suffers from a mental abnormality or personality disorder that renders him or her a menace to the health and safety of others and is likely to engage in sexual offenses if not confined. G. L. c. 123A, §§ 1, 14. In contrast to deportation proceedings, the government has discretion whether to initiate confinement proceedings and, even then, only on a finding of probable cause to believe the person is a sexually dangerous person. G. L. c. 123A, § 12 (b), (c). The person has a right to a jury trial in which the government bears the burden of proving beyond a reasonable doubt that the person is a sexually dangerous person. G. L. c. 123A, § 14. Simply put, the connection between civil confinement and the criminal process is not so close that it becomes "uniquely difficult to

---

and plead guilty "made his deportation virtually mandatory." Id. at 359.

classify as either a direct or a collateral consequence."
Padilla, supra at 366.

Moreover, as the Supreme Court has made clear, an attorney's obligations under the Sixth Amendment to advise his or her client of consequences of a guilty plea are broader than the judge's obligations under the Fifth and Fourteenth Amendments to the United States Constitution to ensure that the plea is voluntary.[10]  Libretti v. United States, 516 U.S. 29, 50-51 (1995).  The Sixth Amendment analysis in Padilla did not erode the well-settled principle that a judge's failure to inform a defendant of a collateral consequence -- such as civil confinement -- is, without more, insufficient to render a defendant's guilty plea involuntary under the due process clause.  See United States v. Youngs, 687 F.3d 56, 62 (2d Cir. 2012) ("advising of the possibility of civil commitment . . . does not fall within the scope of a [D]istrict [C]ourt's due process obligations because the concerns expressed by the Supreme Court in Padilla as to deportation in the context of

---

[10] Although the defendant raised an ineffective assistance of counsel argument in his motion, the judge did not rule on it and the issue is not before us here.  However, to the extent that it could be argued that the Padilla case implicates the "advice of competent counsel" aspect of the due process inquiry, it is clear that the Court's holding was limited to the context of deportation.  See Chaidez v. United States, 133 S. Ct. 1103, 1110 (2013) (emphasizing that unique nature of deportation drove Padilla decision).

adequate counsel under the Sixth Amendment do not apply to such a remote and uncertain consequence as civil commitment"); Hamm v. State, 403 S.C. 461, 465 (2013) ("rationale under Padilla does not extend to a person's civil commitment under the [Sexually Violent Predator] Act"). Consequently, the failure of the judge in this case to advise the defendant of the possibility of civil confinement did not rise to the level of constitutional error.

This is not to say that a judge's failure to accurately inform a defendant of the possibility of civil confinement is irrelevant to the merits of a defendant's motion to withdraw his guilty plea under rule 30. The failure to provide information (as required by our rules) to a defendant with respect to a matter as significant as the possibility of a c. 123A commitment may provide a basis for withdrawing the plea, so long as the defendant shows that he or she was prejudiced by the omission. See, e.g., Commonwealth v. Scott, 467 Mass. 336, 360 (2014) ("claim of prosecutorial nondisclosure require[s] the defendant to make some showing of prejudice or materiality"). Cf. Cepulonis v. Ponte, 699 F.2d 573, 577 (1st Cir. 1983) ("defendant seeking to set aside a guilty plea must at the very least show that correct information would have made a difference in his decision to plead guilty"). In some circumstances, information about the possibility of civil confinement might be

quite relevant to a defendant's decision to plead guilty, whereas in other circumstances, it might not. See Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 580 (2001) ("Each case must be analyzed individually to determine whether compliance with rule 12 would have made a difference in the decision of the defendant to plead guilty"). Accordingly, we hold that where a judge improperly neglects to inform a defendant of the possibility that his or her conviction could serve as a predicate for civil confinement as a sexually dangerous person, the defendant must demonstrate a reasonable probability that but for the judge's error he or she would not have pleaded guilty and would have insisted on proceeding to trial. Where such a showing is made, the magnitude of the deprivation of liberty potentially arising from what the defendant was not told may be sufficient to raise a doubt as to whether justice has been done. Mass. R. Crim. P. 30 (b).

Although, at a minimum, the defendant must aver facts suggesting prejudice, the averment must be credible in the sense that the decision not to plead guilty would have been rational under the circumstances. See Scott, 467 Mass. at 356; DeMarco, 387 Mass. at 486 & n.11. "Factors to consider in deciding whether the defendant's reason for withdrawing his pleas is credible include whether the defendant asserted his legal innocence; referenced weaknesses in the Commonwealth's case or a

possible defense; and whether the parties had reached a plea agreement." Commonwealth v. Murphy, 73 Mass. App. Ct. 57, 67 (2008). A judge may also consider "the timing of [the] request to vacate the plea," id.; "whether '[t]he defendant was represented by, and had the advice of, able counsel throughout,'" id., quoting Rodriguez, 52 Mass. App. Ct. at 583;[11] the sentence the defendant received versus the maximum allowable sentence had he or she gone to trial, see Commonwealth v. Furr, 454 Mass. 101, 112 (2009); "the force and plausibility of the proffered reason," Rodriguez, supra at 580 n.10, quoting United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995); and, in sexual offense cases, the likelihood of civil confinement in light of any evidence relevant to the other elements of sexually dangerous person status. See Shindell, 63 Mass. App. Ct. at 505 n.3 ("there is nothing in the record to suggest that the defendant meets the remaining portion of the definition of 'sexually dangerous person' set out in [G. L. c.123A, § 1].

---

[11] Where, for example, counsel has informed the defendant of the possibility and parameters of civil confinement as a sexual offender, the prospect of prejudice arising from the judge's omission will be diminished significantly. See Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 583 (2001), quoting Commonwealth v. Russell, 37 Mass. App. Ct. 152, 157 (1994), cert. denied, 513 U.S. 1094 (1995) ("Representation and consultation with counsel are significant factors in determining whether a guilty plea . . . not accompanied by a [sufficient plea colloquy] was, nonetheless, knowingly and voluntarily made").

Therefore, it seems unlikely that advisement of the possibility of proceedings pursuant to c. 123A would have made any difference in the decision to plead guilty"). "Ultimately, a defendant's decision to tender a guilty plea is a unique, individualized decision, and the relevant factors and their relative weight will differ from one case to the next." Scott, supra at 356.

Here, the motion judge's memorandum of decision did not include findings as to whether knowledge of the possibility of civil confinement would have affected materially the defendant's decision to plead guilty. The judge did not engage in an analysis of the credibility of the defendant's reason for withdrawal, including, for example, the fact that the defendant faced the possibility of multiple life sentences had he been convicted following a trial on the fourteen indictments and, by pleading guilty, reduced his maximum time in prison to thirteen years. See Furr, 454 Mass. at 112 ("highly generous sentence recommendation that the defendant received in light of the offenses with which he was charged strongly supports the conclusion that the defendant chose voluntarily to plead to those offenses"). It is, thus, unclear on the present record whether the defendant has established a reasonable probability that he would not have pleaded guilty had he been informed of the possibility of civil confinement. Accordingly, the matter

must be remanded for further findings and rulings on the merits of the defendant's motion to withdraw his guilty pleas.  See Gibney v. Commonwealth, 375 Mass. 146, 148 (1978) ("arguments raised by the petitioners are based on factual questions that are best left for resolution in the first instance by the trial judge on a motion for new trial").

3. Conclusion.  The order allowing the defendant's motion to withdraw his pleas is vacated, and the matter is remanded to the Superior Court for further findings and rulings consistent with this opinion.

So ordered.