NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1348

COMMONWEALTH

vs.

JONATHAN CASTRO.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2014, the defendant pleaded guilty to one count of second-degree murder, one count of armed assault with intent to murder, one count of possession of a firearm without a license, and one count of carrying a loaded firearm without a license. The plea judge sentenced the defendant to serve the term of his natural life, with parole eligibility in fifteen years for the murder, and to various shorter, concurrent sentences on the other charges.  Nearly a decade later, the defendant submitted a motion to vacate his guilty plea because he feared the consequences of deportation should he be released on parole.  A

---

[1] Also known as Manuel Jonathan Castro Menjivar.

judge of the Suffolk Superior Court denied the motion, and the defendant appeals from the denial of that motion.  We affirm.

Background.  We summarize the facts admitted to by the defendant at his September 3, 2014 plea colloquy.  In March 2013, six members of the 18th Street Gang in Chelsea sought to attack two men they believed were part of a rival gang.  The defendant was one of these members and brought a loaded revolver to the attack.  Once the attack began, the defendant fired the revolver at two men who were standing on the porch of a residential building.  Two of the bullets fatally struck one of the men.  The police arrested the defendant later that same evening.  During police questioning following the arrest, the defendant admitted to shooting the victim and that the shooting was gang motivated.

At the plea hearing, the defendant affirmed that he was aware of the possible impact that a conviction would have on his immigration status.  Specifically, the judge advised the defendant that "[i]f you are not a citizen of the United States, I am hereby advising you that pleading guilty to this charge will result in your deportation, your exclusion from admission to the United States, your denial of naturalization pursuant to the laws of the United States."

The defendant also confirmed that he had discussed the immigration consequences of his plea with his lawyer.  In

addition, the defendant and his attorney signed a "Waiver of Defendant's Rights" form before the plea hearing.  The form contained an acknowledgement that the defendant's plea was not the result of any "assurances, or promises."  The defendant confirmed to the judge that he had signed the form voluntarily.  The defendant also confirmed to the judge that he had received no promises other than the plea agreement discussed on the record.[2]

In 2023, the defendant submitted a motion to vacate his guilty plea contending that his counsel was ineffective for failing to inform the plea judge that "there was an active protective order for [the defendant's] safety which should have been applied to [the] plea colloquy."  In support of his motion, the defendant averred that he pleaded guilty "under the assumption that the Suffolk [County] District Attorney['s] Office agreed to protect me with a protective order for me to stay in [the] United Stated for my safety."  The defendant further claimed his life would be in danger from "gang members"

_____

[2] As terms of the plea agreement, the defendant pleaded guilty to the lesser included charge of murder in the second degree, armed assault with intent to murder, unlawful possession of a firearm without a license, and carrying a loaded firearm without a license.  Two counts -- assault by means of a dangerous weapon and unlawful possession of ammunition -- were dismissed at the request of the Commonwealth.

3

involved in his case should he be deported because he had corroborated with the police.

The motion judge, who had not conducted the defendant's plea, denied the motion without a hearing "substantially for the reasons set forth in the Commonwealth's opposition."[3]

Discussion.  "A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b) [, as appearing in 435 Mass. 1501 (2001)]."  Commonwealth v. Lastowski, 478 Mass. 572, 575 (2018), quoting Commonwealth v. Sylvester, 476 Mass. 1, 5 (2016).  "Although the disposition of such a motion is within the discretion of the judge, a rigorous standard must be applied and a judge may only allow such a motion 'if it appears that justice may not have been done.'"  Commonwealth v. Berrios, 447 Mass. 701, 708 (2006), quoting Commonwealth v. DeMarco, 387 Mass. 481, 482 (1982).  "We 'review the denial of a motion to withdraw a guilty plea to determine whether there has been a significant error of law or other abuse of discretion'" (citation omitted).  Commonwealth v. Barros, 494 Mass. 100, 111 (2024).

_____

[3] The Commonwealth argued that the defendant had been properly warned of adverse immigration consequences before making his guilty plea, and therefore his plea was knowing, intelligent, and voluntary.  Further, the Commonwealth pointed out there was no evidence, besides the defendant's own affidavit, that a protective order ever existed.

4

Where, as here, the defendant's motion for new trial is premised on a claim of ineffective assistance of counsel, the defendant bears the burden of proving counsel's ineffectiveness. Commonwealth v. Dowds, 483 Mass. 498, 504 (2019). Thus, the defendant must establish, first, that his attorney's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and, second, that the attorney's performance "likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Marinho, 464 Mass. 115, 123 (2013), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

The defendant has not established that plea counsel's performance was deficient. First, the defendant offers no evidence to support his averment as to the existence of a protective order that would have allowed him to stay in the United States.[4] The motion judge was not required to credit the defendant's affidavit. See Marinho, 464 Mass. at 123 ("a judge is entitled to discredit affidavits he or she does not find credible"). During his plea colloquy, the defendant explicitly acknowledged that the Commonwealth had not made any promises to him in addition to the terms of the plea as discussed on the

---

[4] The only protective order that appears on the record is the one requested by the Commonwealth that restricted the dissemination of pretrial discovery by defense counsel.

record.  The record further indicates the defendant was advised of the adverse immigration consequences by his attorney and the court before the defendant agreed to waive his rights and change his plea.  The defendant also confirmed that he had sufficient time to speak with his attorney, that she explained the consequences of the plea, and that he was satisfied that she acted in his best interest.  There is no indication from the record on appeal that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer."  Saferian, 366 Mass. at 96.

To the extent the defendant argues that his guilty plea should be vacated because of the threat to his life if he is deported, we recognize that the defendant will not be eligible for parole until 2028.  It thus follows that the defendant's claim that he faces imminent death upon his deportation is premature.  See Commonwealth v. Casimir, 68 Mass. App. Ct. 257, 259 (2007) ("[Defendant] offered no evidence to the motion judge that removal proceedings have been initiated against him or that he has been denied naturalization . . . .  Merely being 'subject' to removal or that he 'may' be denied citizenship is insufficient").  As the motion judge pointed out, any agreements with the government "can be raised if and when deportation proceedings are commenced."

6

We further note that the defendant has made no showing that when he pleaded guilty he was unaware that his life would be in danger if he were to be deported. In his affidavit supporting his motion for new trial, the defendant does not aver that there was any new information that had come to light since his plea that represented a change of circumstances that heightened his concern for such a risk.

Finally, the defendant argues for the first time on appeal that (1) a public notice issued by the Suffolk County District Attorney effectively placed his life at risk, as it informed fellow gang members that he cooperated with the police; and that (2) plea counsel was ineffective by not fully explaining the risk to his life upon deportation. Because the defendant raises these claims for the first time on appeal, these claims are

waived for purpose of this appeal.  See Mass. R. Crim. P. 30 (c) (2).  See also Commonwealth v. Roberts, 472 Mass. 355, 359 (2015).

Order denying motion to
withdraw guilty plea
affirmed.

By the Court (Ditkoff,
Englander & Smyth, JJ.[5]),

Clerk

Entered:  May 15, 2025.

---

[5] The panelists are listed in order of seniority.