NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-453

COMMONWEALTH

vs.

CHARLES R. JENKINS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 1989, the defendant, Charles R. Jenkins, having been indicted for murder in the first degree, was convicted of murder in the second degree after an eight-day jury trial, and was sentenced to life in prison.  On June 16, 2023, the defendant filed a third motion for a new trial[1] pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), arguing the trial judge committed structural error during jury selection by failing to properly ask prospective jurors

_____

[1] Although this is the defendant's third motion for a new trial, this is the fourth time the defendant's conviction has been reviewed on appeal.

statutorily-required questions pursuant to G. L. c. 234, § 28.[2]

The defendant also argued that the prosecutor's closing argument

was rife with improper statements and argument that created a

substantial risk of a miscarriage of justice.  On April 2, 2024,

a judge of the Superior Court denied the defendant's motion

without an evidentiary hearing, and this appeal followed.  We

affirm.

Discussion.  While a defendant may obtain a new trial "if

it appears that justice may not have been done," Mass. R.

Crim. P. 30 (b), "[a] strong policy of finality limits the grant

of new trial motions to exceptional situations, and such motions

should not be allowed lightly" (citation omitted).  Commonwealth

v. Ubeira-Gonzalez, 87 Mass. App. Ct. 37, 39-40 (2015).  As

such,

> "[a]ny grounds for relief not raised by the defendant in
> his original or amended motion for a new trial are 'waived
> unless the judge in the exercise of discretion permits them
> to be raised in a subsequent motion, or unless such grounds
> could not reasonably have been raised in the original or
> amended motion.'"

Commonwealth v. Roberts, 472 Mass. 355, 359 (2015), quoting

Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501

(2001).  "The rule of waiver applies equally to constitutional

---

[2] General Laws c. 234, § 28, was repealed in 2016.  In
relevant part, it was identical to the current statute, G. L.
c. 234A, § 67A.

claims which could have been raised, but were not raised on direct appeal or in a prior motion for a new trial" (quotation and citation omitted).  Id.  As such, when claims are not preserved on appeal, "we need only ask whether those claimed errors produced a substantial risk of a miscarriage of justice." Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

Here, the defendant fails to raise any arguments that could not have been raised either on direct appeal or in his two previous motions for a new trial.  Therefore, we agree with the motion judge that the arguments set forth in the defendant's third motion are waived.[3]  See Roberts, 472 Mass. at 359.  See also Commonwealth v. Francis, 485 Mass. 86, 105-106 (2020), cert. denied, 141 S. Ct. 2762 (2021) (discussing influence of passage of time on waiver).  Nevertheless, given the stakes at issue, we review the defendant's claims for a substantial risk of a miscarriage of justice.  See Randolph, 438 Mass. at 297.

1.  Impartial jury.  The defendant argues that he was denied a trial by an impartial jury because the trial judge purportedly altered language, statutorily required under G. L.

---

[3] The defendant correctly states that our review of his motion for a new trial is de novo because "the motion judge was not the trial judge and the evidence produce was purely documentary."  Commonwealth v. Watt, 493 Mass. 322, 328 (2024).  However, the standard of review does not alter our decision that the defendant's arguments are waived.

c. 234, § 28, when he asked the venire during voir dire examination whether they were "aware" of certain fundamental principles such as the presumption of innocence and the burden of proof, rather than if they could "accept" those principles —- the language requested by the defendant's attorney.[4]  To be clear, G. L. c. 234, § 28, required that voir dire examination "include questions designed to learn whether such juror understands that a defendant is presumed innocent until proven guilty, that the commonwealth has the burden of proving guilt beyond a reasonable doubt, and that the defendant need not present evidence in his behalf" (emphasis added).  Therefore, the defendant claims error in the trial judge's questioning, asserting that a juror's mere awareness of these principles does not equate to an understanding or a willingness to apply those principles.  However, after reviewing the judge's instructions "as a whole" (citation omitted), Commonwealth v. Hill, 387 Mass. 619, 624-625 (1982), we disagree.

After the venire was advised as to the nature of the case and the charge against the defendant, the judge inquired if any members of the venire had any biases or personal interests in

_____

[4] The defendant's requested jury instructions sought to ask potential jurors, in detail, if they understood and could accept the presumption of innocence and the government's burden of proof beyond a reasonable doubt.

4

the case that would preclude them from serving as a juror. The judge then informed the venire that "there are certain principles of law that apply to all criminal cases" and asked whether the venire was "aware of these principles in a general way." The trial judge went on to describe the principles of the presumption of innocence, the Commonwealth's burden of proof, and the reasonable doubt standard, and after he stated each principle, he asked if there is "any member of the venire who is not aware of that principle." When the judge asked whether there was any member of the venire who was "aware of any reason why he or she could not be a fair and impartial juror and decide this case fairly and impartially, based exclusively and solely upon evidence introduced," multiple members of the venire identified themselves and the judge questioned them individually. As a result of this questioning, the judge excused certain jurors for their inability to be impartial.

Accordingly, given that the judge accurately identified and described the principles,[5] informed the jurors that the principles applied to the case at hand, and asked each juror if the juror was "aware" of each principle, we conclude that the judge's examination of the venire in its totality sufficed to

---

[5] The defendant does not challenge the judge's description of the principles.

5

ensure that the jurors understood the relevant constitutional principles in compliance with the requirements of G. L. c. 234, § 28.[6] Furthermore, following the close of evidence, the judge provided a final instruction to the jury where he described the relevant principles in greater detail and again informed the jurors that those principles apply to the case before them. Given this context, the judge's initial examination of the venire was not error and as such did not create a substantial risk of a miscarriage of justice. Randolph, 438 Mass. at 297.

2. Commonwealth's closing argument. The defendant also asserts that the prosecutor's closing argument substantially risked a miscarriage of justice because the prosecutor improperly (1) argued that the presence of spectators in the courtroom influenced a key eyewitness's testimony; (2) vouched for the defendant's prior identification by a key witness; and (3) speculated that the defendant acted with malice by deliberately moving the knife's aim from the victim's knee to the victim's chest when stabbing him during the assault. Again, we disagree and address each claim in turn.

a. Spectators in the courtroom. The defendant asserts that the prosecutor impermissibly argued outside of the evidence

---

[6] Notably, neither G. L. c. 234, § 28, nor the current statute, G. L. c. 234A, § 67A, mandate that a judge conducting an examination use specific language.

6

by speculating that the change in the testimony of the key witness, Debra Howard, may have been influenced by the presence of certain spectators in the courtroom.  Previously we summarized the changes in Howard's testimony as follows:

> "[Howard] testified at the defendant's probable cause hearing that she saw the defendant pull a knife out of the victim's chest, and she told the grand jury that she saw the defendant stab the victim.  At trial, however, she testified that she could no longer state that it was the defendant who stabbed the victim.  She knew only that the assailant had on a red shirt, as did the defendant and others in the crowd.  Debra acknowledged her prior testimony and stated that she believed the truth of those statements at the time that she made them.  However, after speaking with the other witnesses the very morning of her trial testimony, she could no longer state with certainty that the defendant stabbed the victim.  The only fact about which she was certain was that the victim's assailant was wearing a red shirt."

Commonwealth v. Jenkins, 34 Mass. App. Ct. 135, 144-145 (1993), S.C., 416 Mass. 736 (1994).[7]

Howard also testified at trial that she was told not to testify by multiple people and that there was a disturbance at her home, which she attributed to her decision to testify for the Commonwealth.  Indeed, we previously recognized that "[t]here was evidence of intimidation of [Howard]."  Jenkins, 34 Mass. App. Ct. at 145.  Importantly, during her direct

---

[7] While the Supreme Judicial Court's subsequent decision superseded our decision, it was on another ground; the court "agree[d] with the Appeals Court's treatment of" this issue. Jenkins, 416 Mass. at 741.

7

examination, the prosecutor asked Howard about the presence of certain people sitting in the back of the courtroom, and the judge made sure that the record reflected that "the man in the white [shirt] that [the prosecutor] just referred to just ran out of the Courtroom." Although Howard denied that the presence of anyone in the courtroom influenced her testimony, it was not improper for the prosecutor to pose the following questions to the jury:

> "And you may also noticed [sic], and ask yourself, did she at all change her testimony depending upon who was in the back of the courtroom. Was there certain times of her testimony when she was more certain of the red shirt when certain people were absent? More certain when they were absent and less certain when they were present?"

These questions simply called on the jury to "rely on their common sense and life experience in assessing evidence and [Howard's] credibility." Commonwealth v. Salazar, 481 Mass. 105, 117 (2018). Indeed, "[a] prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs." Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). Therefore, because it was each juror's role to assess Howard's credibility, Commonwealth v. Montanino, 409 Mass. 500, 504 (1991), and because the spectators came and went from the courtroom during Howard's testimony in

8

front of the juror's eyes, the prosecution was free to urge the jurors to apply their common sense and ask themselves whether Howard's testimony or demeanor was influenced by the presence of certain spectators as it relates to her credibility. As such, there was no error.

b. Improper vouching. The defendant also claims that the prosecutor improperly vouched that the science behind eyewitness identification supported Howard's initial identification of the defendant, which he avers undercut her testimony at trial, by stating the following:

> "When you talk about identification, what we're talking about is a witness's ability to recall -- to go back into their memory and recall the physical features an[d] appearances that had been imprinted on their memory of a person they had seen before. The eyes are like a lens. And they take pictures that are imprinted and burned into your memory. And although you may not be able to articulate all the subtle differences in description, you are able to recall that, and bring that forward."

It is well settled that "[a] prosecutor may marshal the evidence in closing argument, and, in doing so, may urge the jury to believe the government witnesses and disbelieve those testifying for the defendant." Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005). It is also well settled that "[i]mproper vouching occurs if 'an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.'"

9

Commonwealth v. Ortega, 441 Mass. 170, 181 (2004), quoting Commonwealth v. Wilson, 427 Mass. 336, 352 (1998). Importantly, "[t]he jury are presumed to understand that a prosecutor is an advocate, and [therefore] statements that are [e]enthusiastic rhetoric, strong advocacy, and excusable hyperbole will not require reversal" (quotation and citation omitted). Commonwealth v. Martinez, 476 Mass. 186, 199 (2017).

Here, although the prosecutor's hyperbolized comparison of Howard's eyes to a camera or a "lens" arguably toed the line of permissible argument and would better have been left unsaid, we conclude that it did not cross the line. See Commonwealth v. Yesilciman, 406 Mass. 736, 746 (1990) ("certain measure of jury sophistication in sorting out excessive claims on both sides may fairly be assumed" [citation omitted]). The prosecutor did not vouch for his personal belief in the veracity of Howard's prior identification. Nor do we agree with the defendant that the prosecutor's statement can be fairly characterized as communicating some specialized scientific knowledge. Nevertheless, the judge instructed the jury that closing arguments are not evidence, and we presume that the jury understood and followed those instructions. Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015). Accordingly, we are not persuaded that the analogy constituted reversible error. See

10

<u>Commonwealth</u> v. <u>Sanders</u>, 101 Mass. App. Ct. 503, 511 (2022) (closing referred to defendant as "liar" and characterized defense as "garbage"; under circumstances, no substantial risk of miscarriage of justice).

c. <u>Evidence of malice</u>. The defendant finally contends that the prosecutor's statement that malice can be inferred from the fact that defendant first stabbed the victim in the knee and then stabbed the victim in the chest amounted to improper speculation. This argument misstates the record. The prosecutor argued to the jury that they could infer malice from "the very nature of the use of the weapon" and from the fact that "[t]he defendant consciously took that knife and directed it at that portion of the chest, the vital organ of the body." The prosecutor did not argue, as the defendant claims, that the jury should infer malice simply from the sequence of the stab wounds. Moreover, while Howard did not testify that she saw the defendant inflict the fatal blow, she did testify that she saw the "man with a red shirt" withdraw the knife from the victim's chest. The prosecutor was therefore entitled to argue that the defendant intentionally stabbed the victim in the chest. <u>Commonwealth</u> v. <u>Paradise</u>, 405 Mass. 141, 152 (1989) (prosecutor "entitled to argue the evidence and fair inferences to be drawn therefrom").

11

Accordingly, the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice.[8] Randolph, 438 Mass. at 297. The judge's order denying the defendant's third motion for a new trial is affirmed.

So ordered.

By the Court (Desmond, Ditkoff & Englander, JJ.[9]),

Clerk

Entered: June 9, 2025.

---

[8] For the reasons discussed supra, we conclude that there was no cumulative error requiring reversal.

[9] The panelists are listed in order of seniority.

12