Commonwealth *v.* Alvarez.

Commonwealth *vs.* Pedro Alvarez.[1]

No. 02-P-875.

Hampden. December 9, 2004. - February 8, 2005.

Present: Kantrowitz, Doerfer, & Kafker, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Continuance.

The criminal defendant failed to demonstrate any prejudice resulting from his trial counsel's failure to request a continuance after making his first appearance only ten days prior to trial, where the defendant offered no affidavits from any potential witnesses setting forth testimony they might have given if interviewed and did not obtain an affidavit from his trial counsel regarding his strategy [869-870]; moreover, the defendant's informed and voluntary agreement to proceed in accordance with trial counsel's recommendation undermined his claim that counsel was ineffective for pursuing that strategy at trial [870-871].

This court declined to adopt a new rule of law presuming prejudice when a criminal defense attorney fails to request a continuance when having only ten days to prepare for a murder trial [871-873], and concluded that the criminal defendant, whose trial counsel failed to make such a request in such circumstances, did not meet his burden of demonstrating that his counsel's actions fell within the per se ineffective assistance of counsel exception set forth in *United States* v. *Cronic,* 466 U.S. 648, 659 (1984), where trial counsel had clearly subjected the prosecution's case to meaningful adversarial testing, resulting in the jury returning a verdict of a lesser included offense [872-873].

Indictments found and returned in the Superior Court Department on July 21, 1992.

The cases were tried before *Peter A. Velis,* J., and a motion for a new trial, filed on November 1, 2002, was heard by him.

*Jaclyn R. Greenhalgh* for the defendant.

*Brett J. Vottero,* Assistant District Attorney, for the Commonwealth.

Kantrowitz, J. The defendant appeals from his convictions of

[1]Also known as Hector Guillan.

murder in the second degree and assault and battery by means of a dangerous weapon. He argues that his counsel was ineffective for failing to request a continuance after making his first appearance only ten days prior to trial. Because we find that the defendant did not demonstrate any prejudice to his case by counsel's performance, and we reject the application of a per se rule, we affirm.

*Facts.* The evidence at trial justified the jury in finding the following facts. On June 9, 1992, the defendant and his friend "Chi-Chi," who were on the back porch of the defendant's third-floor apartment in Holyoke, engaged in a heated argument with Raul Santana and Melanio "Nano" Fernandez, who were standing in the yard. Chi-Chi claimed that Nano owed him money for drugs. The argument escalated and the parties decided to resolve the matter with their fists. Thereupon, the defendant went from his porch into his apartment, then returned to the porch and traveled down the stairs to the yard, followed by Chi-Chi. When the defendant arrived at ground level, he approached Raul, pulled a revolver from his pants, and fired at Raul and Nano. Raul, who did not initially realize he was shot, ran off. Five to ten minutes later, Raul met up with Nano, who had also been shot. Nano died from his wound that same day.

As the grand jury were in the process of returning indictments for murder in the first degree and assault and battery by means of a dangerous weapon, the defendant was in the process of fleeing. It was not until eight years later that he was located in California, where he was incarcerated on unrelated Federal drug charges.

The defendant filed a demand for a speedy trial pursuant to the Interstate Agreement on Detainers, which requires that he be brought to trial within 180 days. St. 1965, c. 892, § 1, art. III(a). *Commonwealth* v. *Martens*, 398 Mass. 674, 675 (1986), cert. denied, 481 U.S. 1041 (1987). Upon his return to Massachusetts, he was arraigned on May 14, 2001. At that proceeding, the Commonwealth, apparently acting out of concern for the 180-day limit, requested a trial date of May 24, only ten days after the arraignment. The judge continued the matter for one day for pretrial conference and, more importantly, to allow the defendant to confer with his newly-appointed trial counsel.

The following day, the defendant and his attorney willingly acceded to the trial date requested by the Commonwealth. Wisely, the judge questioned both counsel[2] and the defendant[3] about the decision and indicated that a request for a continuance would, in all likelihood, be granted. The offer was refused.

On the day of trial, a different judge, once again appropriately, questioned both counsel and the defendant concerning their readiness. Like the arraignment judge, the trial judge suggested the possibility, if not the probability, of a continuance, if one were requested. Counsel and the defendant assured the judge that they were ready and prepared for trial; neither of them made a request for additional time, and the trial commenced.[4]

During the two-day trial, the Commonwealth presented testimony from five eyewitnesses to the incident. Raul Santana, one of the victims, was the chief witness and identified the defendant as the person who shot him at point blank range. Although Raul did not see the defendant shoot Nano, he heard three or four gunshots as he fled. Witnesses Jose Rodriguez and Maria Alicea testified that they saw the defendant shoot Raul and Nano. Neighbor Marilyn Solis testified that she heard the altercation and observed the defendant putting a gun in his

---

[2] Counsel responded, "I received the discovery. I have discussed the matter with my client. My client wishes to go to trial. I'm telling Your Honor that I will be ready for trial. . . . And we are ready for trial, Judge."

[3]
> "THE COURT: Well, sir, you understand that it is unusual for the Court to insist upon defense counsel being ready for trial on [ten] days' notice. If defense counsel wanted a continuance, the Court would probably give him one. You realize that?
>
> "THE DEFENDANT: Yeah, but I want to get it over with.
>
> "THE COURT: All right. You've talked about this thoroughly with [defense counsel]?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: This is what you want to do?
>
> "THE DEFENDANT: Mm-hmm."

[4] After the judge reviewed the voir dire questions to be put to the jury, the judge again asked counsel whether the defendant was ready for trial, to which counsel responded affirmatively.

pants afterward. Finally, witness Daisy Cruz, a friend of the defendant and the person the defendant asked to aid his subsequent flight from Massachusetts, testified that during the initial verbal argument, she observed the defendant go into his apartment and return with a handgun. The defense offered no witnesses.

A jury returned guilty verdicts of murder in the second degree and assault and battery by means of a dangerous weapon, from which the defendant now appeals.[5]

*Standard of review.* The principles regarding ineffective assistance of counsel are both well-known and well-settled. We ask "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Breese* v. *Commonwealth*, 415 Mass. 249, 252 (1993), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). "In addition to a showing of incompetence of counsel, our cases usually require a demonstration of prejudice resulting therefrom." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979).

We now turn to various considerations raised by the defendant.

*Prejudice.* We start with the observation that the defendant is unable to demonstrate any prejudice. As the motion judge, who was also the trial judge, observed in his memorandum of decision denying defendant's motion for a new trial, the defendant "has offered no affidavits from any potential witnesses setting forth the testimony that they would have given if interviewed." Indeed, the defendant is unable to demonstrate a single instance of how additional time and preparation would have benefited his cause.

"In [considering a motion for new trial], the judge looks not only to the seriousness of the claims presented, but also to the adequacy of the defendant's factual showing on those claims." *Fogarty* v. *Commonwealth*, 406 Mass. 103, 111 (1989), *S.C.*,

---

[5]The defendant also appeals from the denial of his motion for a new trial.

419 Mass. 456 (1995). The defendant's failure to include affidavits from witnesses whose testimony, if properly elicited, could have been a "real factor in the jury's deliberations," is telling. *Commonwealth* v. *Colantonio*, 31 Mass. App. Ct. 299, 302 (1991), quoting from *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986). Without these affidavits, the judge was "unable to rule on the question of whether [the witnesses'] testimony would likely have made a material difference." *Commonwealth* v. *Collins*, 36 Mass. App. Ct. 25, 30 (1994).

Additionally, the defendant failed to include an affidavit from defense counsel. See *Commonwealth* v. *Lynch*, 439 Mass. 532, 539 n.2, cert. denied, 540 U.S. 1059 (2003) ("It is significant that no affidavit from trial counsel was submitted in connection with [the defendant's] motion for a new trial"); *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 505 n.6 (2001) ("Conspicuously absent was an affidavit from trial counsel supporting the defendant's contention"). Without that affidavit, we have only the defendant's self-serving statements regarding trial counsel's strategy.[6]

*Prejudice per se.* Perhaps recognizing the lack of prejudice shown, the defendant argues for a new rule of law, presuming prejudice when a defense attorney fails to request a continuance when having only ten days to prepare for a murder trial. Alternatively, he argues, relying on *United States* v. *Cronic*, 466 U.S. 648 (1984), that his counsel entirely failed to test the Commonwealth's case, thus invoking an exception to the normal rules of ineffective assistance of counsel.

Even if there may be some circumstances where applying a per se rule might be appropriate, we decline to use that approach here. See *United States* v. *Cronic, supra*; *Bell* v. *Cone*, 535 U.S. 685 (2002). See also *Commonwealth* v. *Satterfield*,

---

[6]The defendant's affidavit states: "My counsel stated that he did not believe that the Commonwealth could be ready for a murder trial in ten days. Counsel further stated that even if I was found guilty, that on appeal my conviction would be reversed. Counsel convinced me that it was a 'win' either way and I agreed to go to trial on May 24, 2001." The affidavit also faulted counsel for failing to interview the Commonwealth's witnesses, to locate witnesses that may have been helpful to his defense, and to investigate fully the crime scene and introduce ballistics evidence.

373 Mass. 109, 115 (1977) (there may be rare cases "where the defense was so botched that judgments on th[e] hypothetical question [whether better work might have accomplished something material] would be without value").

As the motion judge noted, the Supreme Judicial Court has found no error in going to trial with less time available to prepare than was available here. See, e.g., *Guerin* v. *Commonwealth*, 339 Mass. 731, 734 (1959) (ten days); *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517-518 (1972) (counsel appointed four hours before trial for rape and kidnapping). Other courts have specifically refused to adopt a presumption of ineffective assistance based on inadequate preparation time. See, e.g., *United States* v. *Cronic*, 466 U.S. at 664-665 (twenty-five days "is not so short that it even arguably justifies a presumption that no lawyer could provide the respondent with the effective assistance of counsel required by the Constitution"); *Rastrom* v. *Robbins*, 440 F.2d 1251, 1254 (1st Cir.), cert. denied, 404 U.S. 863 (1971) ("concern over short preparation time does not need to be institutionalized in the form of a presumption"); *United States ex rel. Williams* v. *Twomey*, 510 F.2d 634, 639 (7th Cir.), cert. denied sub nom. *Sielaff* v. *Williams*, 423 U.S. 876 (1975) ("Nor do we accept as a broad general proposition that counsel appointed on the day of trial is inevitably or even presumptively unprepared to go to trial"). The United States Supreme Court has observed that "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial." *Avery* v. *Alabama*, 308 U.S. 444, 446 (1940). Determinations of ineffectiveness should not be made according to a pre-established timeline, but rather on a case-by-case basis.[7] See *Rastrom* v. *Robbins, supra* at 1253-1254.

The defendant's next contention is that the second of the per se ineffectiveness exceptions outlined in *United States* v. *Cronic*,

---

[7] We observe that counsel's decision not to seek a continuance was tactical in nature, see *Delle Chiaie* v. *Commonwealth*, 367 Mass. 527, 538-539 (1975), and would constitute ineffectiveness only if "manifestly unreasonable." *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991), quoting from *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

466 U.S. at 659, applies to him.[8] In *Cronic*, the trial court appointed a young real estate lawyer to represent the defendant on mail fraud charges, giving him twenty-five days to prepare for trial; the government, conversely, had been working on the case for four and one-half years. The defendant was convicted and sentenced to twenty-five years in prison. The United States Court of Appeals for the Tenth Circuit, without finding any specific prejudicial errors by counsel, reversed, holding that "when circumstances hamper a given lawyer's preparation of a defendant's case, the defendant need not show specified errors in the conduct of his defense in order to show ineffective assistance of counsel." *United States* v. *Cronic*, 675 F.2d 1126, 1128 (10th Cir. 1982). The United States Supreme Court reversed the Tenth Circuit, holding that only under certain specified conditions should a court find prejudice per se. *United States* v. *Cronic*, 466 U.S. at 658-660. Finding that none of the exceptions applied, the Court remanded the case for consideration of any "specific errors made by trial counsel." *Id.* at 666.

In *Bell* v. *Cone*, 535 U.S. 685, the Supreme Court further clarified *Cronic*. In *Bell*, the Court explained that the second exception justifying a finding of prejudice per se — defense counsel's failure to test the prosecution's case — applies only when the attorney's failure to test the government's case is "complete." *Id.* at 697. Thus, unless "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing" (emphasis added), *United States* v. *Cronic, supra* at 659, a finding of ineffectiveness without a demonstration by the defendant of specific errors and resulting prejudice is inappropriate. See *United States* v. *Bell, supra.*

Here, the defendant is, once again, unable to demonstrate the type of failure required by *Cronic* and *Bell*. The record reflects

---

[8]The Supreme Court recognized three situations in which there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" (1) where there is a "complete denial of counsel" at a "critical stage of [the defendant's] trial"; (2) if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *United States* v. *Cronic, supra* at 658-660.

that trial counsel clearly subjected the case to "meaningful adversarial testing," so much so that the jury returned a verdict of murder in the second, not the first, degree.[9]

*Colloquy*. Finally, we point out that "[the defendant's] informed and voluntary agreement to proceed in accordance with trial counsel's recommendation further undermines (although does not preclude) his ability now to claim that counsel was ineffective for pursuing that strategy at trial." *Commonwealth* v. *LaCava*, 438 Mass. 708, 716 (2003). The defendant and his counsel were questioned by two judges on two separate days as to whether they were ready and wished to proceed. In both instances they responded affirmatively, including when the question was put to them moments before trial. The defendant cannot now complain that he really did not mean what he earlier said.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[9]The record also reflects preparation in the form of the filing of several pretrial motions; the employment of a private investigator to explore aspects of the Commonwealth's case; and participation in discovery and the trial itself. Perhaps the best proof of the adequacy of counsel's preparation, in addition to the jury verdict on the lesser included offense, is the defendant's failure to show anything that should have been done differently.