NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11966


COMMONWEALTH  vs.  WILLIAM JOSEPH SYLVESTER.



Norfolk.     April 4, 2016. - November 9, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.[1]




Sex Offender Registration and Community Notification Act.
     Community Parole Supervision for Life.  Constitutional Law,
     Sex offender, Plea, Assistance of counsel.  Practice,
     Criminal, Plea, Assistance of counsel.




     Complaint received and sworn to in the Quincy Division of
the District Court Department on July 11, 2002.

     A motion to withdraw a plea of guilty, filed on July 25,
2013, was heard by Mary A. Orfanello, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Jeffrey Harris for the defendant.
     Susanne M. O'Neil, Assistant District Attorney, for the
Commonwealth.
     Merritt Schnipper, for Committee for Public Counsel
Services, amicus curiae, submitted a brief.

---

     [1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

HINES, J.  The issue in this appeal is whether plea counsel was constitutionally ineffective under the right to counsel guaranties of the Sixth Amendment to the United States Constitution or art. 12 of the Massachusetts Declaration of Rights when counsel advised the defendant in 2002 that he would need to "register" if he decided to plead guilty to indecent assault and battery, a sex offense under G. L. c. 6, § 178C, without explaining the consequences of sex offender registration.  We conclude that plea counsel was not constitutionally ineffective in rendering this advice in 2002, although we leave for another day the question whether such advice would be constitutionally ineffective based on the current statutory scheme for sex offender registration.  We affirm the decision of the District Court judge denying the defendant's motion to vacate his guilty plea.[2]

1.  Background.  We summarize the material facts in the record, reserving certain details for later discussion.[3]  On July

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

[3] The facts of the underlying crime are taken from the police report.  The facts are disputed insofar as the defendant averred that he would not have pleaded guilty if not for plea counsel's failure to properly advise him and appellate counsel argues that it "can be inferred" from this assertion that the defendant "either disputed the facts in the police report or may have had a defense to the crime, such as arguing consent or that

9, 2002, the defendant, then twenty-three years of age, approached a fifteen year old female from behind as she was standing with four teenage friends in a subway station in Quincy. The defendant placed his hands on the female's buttocks and began to "massage" them. He also tried to prevent her retreat by running in front of her, grabbing her front pockets, and pulling her close to him.

The defendant walked away, but returned several minutes later and robbed the one male in the group. He first took thirty dollars from a sweater the male was holding and later removed a silver chain from the male's neck. The teenagers asked someone in the subway station to call the police.

The teenagers described the defendant, including a tattoo on his hand, to police. The next day, the police drove the two victims to the subway station in an unmarked vehicle. Approximately one and one-half hours later, both victims simultaneously identified the defendant when he walked into their view. They both identified the silver chain that the defendant was wearing as that belonging to the male victim. The defendant was charged and in November, 2002, pleaded guilty to the indecent assault and battery charge and two counts of larceny from a person. Insofar as relevant here, the plea judge

he was actually trying to steal from [the female victim]'s back pockets, and not fondle her."

imposed a sentence of eighteen months in a house of correction, six months to be served and the balance suspended, with probation for two years on the indecent assault and battery charge.

In February, 2003, a notice of probation violation was issued to the defendant for committing a new offense, shoplifting, and failing to register as a sex offender with the Sex Offender Registry Board. The defendant was found to be in violation of his probation and was sentenced to serve the remainder of his suspended sentence. Thereafter, the defendant was convicted for a host of other charges between 2004 and 2013, including the failure to register as a sex offender in 2004, 2007, and 2012. In 2008, the defendant pleaded guilty to the 2008 failure to register charge and a Superior Court judge sentenced the defendant to probation for three years and imposed community parole supervision for life.[4]

---

[4] In 2006, the Legislature made community parole supervision for life (CPSL) a mandatory component of the sentence for a sex offender who had been convicted of certain sex offenses and was later convicted of failure to register. St. 2006, c. 139, §§ 26, 27, amending G. L. c. 6, § 178H. In Commonwealth v. Cole, 468 Mass. 294, 308 (2014), we held CPSL unconstitutional because it "constitutes an impermissible delegation to the executive branch of the core judicial function of imposing sentences, and therefore violates the mandate of art. 30 of the Massachusetts Declaration of Rights."

In July, 2013, the defendant filed a motion to withdraw his 2002 guilty plea or for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), concerning the indecent assault and battery charge, arguing that his plea counsel was constitutionally ineffective and his plea was therefore involuntary because he did not fully appreciate the consequences of pleading guilty to a sex offense.  Specifically, the defendant asserted the following in an affidavit:  (1) plea counsel "did not explain to me that the consequences of pleading guilty to indecent assault and battery meant that I would become a sex offender and that I might have to register with the police indefinitely"; (2) on the day of the plea hearing, counsel advised that "I would 'have to register' but did not explain what this meant.  I had no idea that this meant that I had to report as a sex offender"[5]; and (3) "[h]ad I fully understood that 'registering' meant that I would be a sex offender and that I would have to register as a sex offender and someday be subject to lifetime community parole, I would not have pleaded guilty to a sex offense."[6]  The defendant did not present an

_____

[5] The defendant asserted that he and plea counsel had this discussion at the court house.  The defendant was incarcerated after the complaint issued, presumably limiting counsel's options in meeting with the defendant.

[6] For purposes of our analysis in this case, we accept as true the defendant's assertion that plea counsel advised him

affidavit from plea counsel.  His motion counsel averred that plea counsel had told him that plea counsel did not "remember anything from that time" and did not respond to repeated attempts to obtain an affidavit.

The defendant supported his motion with materials from a disciplinary investigation against plea counsel.  In 2007, the Board of Bar Overseers (board) filed a petition of discipline against plea counsel alleging that he intentionally misused client funds from April through September, 2002, and failed to make full restitution.[7]  In mitigation, plea counsel testified at an evidentiary hearing before the board that he was abusing cocaine at the time that he misused funds and did not have the financial resources to complete restitution because of his drug abuse.  He testified that "life was nothing but a blur" when he was misusing the funds because he was "using cocaine every day." The board found that drugs "distorted [counsel's] judgment" and considered his remorse, rehabilitation, and good works in mitigation of the wrongdoing.  In 2008, plea counsel was indefinitely suspended from the practice of law for the misuse of and failure to repay client funds.

---

that he would need to "register" but did not explain the consequences of registration.

[7] The record reflects that plea counsel filed several appropriate motions on the defendant's behalf before the guilty plea.

The motion judge, who was also the plea judge, denied the defendant's motion after concluding, for several reasons, that he had failed to establish that plea counsel was constitutionally ineffective. First, the judge noted that CPSL did not become law until four years after the defendant entered his plea and that counsel was "not required to be clairvoyant." Second, relying on Commonwealth v. Shindell, 63 Mass. App. Ct. 503, 506 (2005), the judge concluded that failure to warn of sex offender registration consequences could not be grounds to vacate a plea on the basis of ineffective assistance of counsel because it is a collateral consequence of conviction. Third, the judge found that it was "clear" that the defendant was warned of the need to register because the defendant admitted as much in his affidavit, the docket reflected the receipt of such warnings, and it was her "custom and practice" to do so during the plea colloquy. Fourth, there was no evidence that counsel was impaired at the time of the plea or that any asserted impairment negatively affected representation. And fifth, the defendant did not demonstrate any prejudice because he had no practical defense and could not credibly suggest that a more favorable plea could have been negotiated considering the strength of the Commonwealth's case against him and the defendant's significant and lengthy criminal record.

The defendant appealed.  We allowed his application for direct appellate review.

2.  Standard of review.  "A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b)."  Commonwealth v. Lavrinenko, 473 Mass. 42, 47 (2015), quoting Commonwealth v. DeJesus, 468 Mass. 174, 178 (2014).  We review the denial of a motion to withdraw a guilty plea to "determine whether there has been a significant error of law or other abuse of discretion."  Lavrinenko, supra, quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  "A judge may make the ruling based solely on the affidavits and must hold an evidentiary hearing only if the affidavits or the motion itself raises a 'substantial issue' that is supported by a 'substantial evidentiary showing.'"  Commonwealth v. Scott, 467 Mass. 336, 344 (2014), quoting Commonwealth v. Stewart, 383 Mass. 253, 260 (1981).  "Particular deference is to be paid to the rulings of a motion judge who served as the [plea] judge in the same case."  Scott, supra, citing Commonwealth v. Leavitt, 21 Mass. App. Ct. 84, 85 (1985).

3.  Discussion.  "Generally, under Massachusetts law, defense counsel's failure to inform a defendant of collateral or contingent consequences of a plea does not render a plea involuntary."  Commonwealth v. Roberts, 472 Mass. 355, 362 (2015), quoting Shindell, 63 Mass. App. Ct. at 505.  In the

Shindell case, the Appeals Court concluded, on this basis, that defense counsel is not constitutionally required to warn of sex offender registration consequences. See Shindell, supra at 508, citing Commonwealth v. Fraire, 55 Mass. App. Ct. 916, 918 (2002). The defendant argues, however, that the United States Supreme Court, in Padilla v. Kentucky, 559 U.S. 356, 364-366 & n.8 (2010), abrogated the distinction between direct and collateral consequences and created a new framework for determining whether a consequence of conviction has a uniquely "close connection" to the criminal process to require warnings under the right to counsel guaranties of the Sixth Amendment. Under that framework, the defendant asserts that, to provide constitutionally effective assistance, counsel must warn clients about consequences of sex offender registration when they are considering whether to plead guilty to a "sex offense" as defined in G. L. c. 6, § 178C.

In the Padilla case, the Supreme Court considered for the first time whether the Sixth Amendment applied to advice about deportation, which was not a component of a criminal sentence but a "collateral consequence[]" of a conviction. See Chaidez v. United States, 133 S. Ct. 1103, 1111-1112 (2013). Noting that Kentucky and many other State and lower Federal courts had concluded that deportation, as a "collateral" consequence, was outside of the scope of the Sixth Amendment's right to counsel,

Padilla, 559 U.S. at 365 & n.9, the Supreme Court determined that the distinction between direct and collateral consequences was not appropriate for deportation analysis because deportation is "uniquely difficult to classify as either a direct or a collateral consequence."[8] Id. at 366. Specifically, the Court concluded that the right to counsel under the Sixth Amendment applies to deportation because of its uniquely "close connection" to the criminal process, on account of two factors: its "nearly . . . automatic result for a broad class" of offenders, and "particularly severe" penalty. Id. at 365, 366.

We have interpreted the Padilla case not as an abrogation of the direct and collateral consequence distinction, as the defendant suggests, but simply as clarification that deportation is not "'collateral' to the criminal justice process" because of the court's "deep appreciation of the 'seriousness of deportation' for noncitizen defendants." Commonwealth v. Marinho, 464 Mass. 115, 124 (2013), quoting Padilla, 559 U.S. at 374. See Commonwealth v. Sylvain, 466 Mass. 422, 431 n.13

---

[8] The United States Supreme Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of 'reasonably professional assistance,'" under Strickland v. Washington, 466 U.S. 668, 689 (1984), see Padilla v. Kentucky, 559 U.S. 356, 365 (2010), and that lower courts disagree about how to apply the distinction. Id. at 364-365 & n.8. Any such disagreement, however, had no "bearing on the disposition" of the case because of the unique nature of deportation. Id. at 364 n.8.

(2013), S.C., 473 Mass. 832 (2016), quoting Marinho, supra at 125 n.14 ("We have recently underscored that 'characterizations of immigration consequences as 'collateral' are no longer good law"). See Roberts, 472 Mass. at 363 n.10 ("it is clear that the Court's holding [in the Padilla case] was limited to the context of deportation"). This interpretation is supported by the Supreme Court in the Chaidez case, wherein the Court noted that it "did not eschew the direct-collateral divide across the board" in the Padilla case, but rather concluded that the distinction was "ill-suited" for deportation consequences. Chaidez, 133 S. Ct. at 1112, quoting Padilla, supra at 366. In that regard, we reiterate our conclusion that the only mandate stemming from the Padilla case is that deportation may not be treated as a collateral consequence outside the scope of the Sixth Amendment.

Although not required, the framework used in the Padilla case -- to determine whether deportation was sufficiently close to the criminal process to be within the scope of the Sixth Amendment -- can be applied here. Other jurisdictions have applied the factors discussed in the Padilla case to sex offender registration consequences with mixed results.[9] Applying

---

[9] Compare State v. Trotter, 330 P.3d 1267, 1274-1275 (Utah 2014), cert. denied, 135 S. Ct. 944 (2015) (sex offender registration not within scope of Sixth Amendment where "onerous"

the Padilla factors to this case, we reject the defendant's contention that the sex offender registry scheme as it existed in 2002 had a uniquely close connection to the criminal process such that it should be included within the scope of constitutionally required warnings under the Sixth Amendment. Even though we agree that consequences of the sex offender registry statutes are "practically inevitable," Padilla, 559 U.S. at 364, after a defendant pleads guilty to a "sex offense" as defined therein, we conclude that the accompanying penalties, as they existed in 2002, were not so severe as to require defense counsel to advise clients about consequences of registration as a constitutional matter.

a.  Likelihood of consequences.  In Padilla, 559 U.S. at 363-364, the Supreme Court observed that deportation became "practically inevitable" after the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which amended the Immigration and Nationality Act.  See

---

burdens do not "rise to the same level of severity as deportation"), with Taylor v. State, 304 Ga. App. 878, 882-884 (2010) (defense counsel must advise of sex offender registration because penalties such as public dissemination of registration information are particularly severe), and People v. Fonville, 291 Mich. App. 363, 391-392 (2011) (same; penalties included residency restrictions).  See United States v. Riley, 72 M.J. 115, 120-122 (C.A.A.F. 2013) (in military justice system, where standards for plea colloquy are stricter and judge's guide commands sex offender registration warnings before accepting a plea, sex offender registration no longer collateral consequence to plea).

Commonwealth v. Clarke, 460 Mass. 30, 45 (2011), citing Pub. L. No. 104-208, 110 Stat. 3009-546 (eff. Apr. 1, 1997). See also Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 292 (2001). This act, which eliminated the Attorney General's authority to grant discretionary relief that had been exercised in more than 10,000 cases in the prior five years, followed several changes in immigration law that reduced avenues available for discretionary relief from deportation. Padilla, 559 U.S. at 363. Although the Court noted that the Attorney General retained the possibility to "exercise . . . limited remnants of equitable discretion . . . to cancel removal for noncitizens convicted of particular classes of offenses," this relief was generally not available with respect to the offense for which the defendant had pleaded guilty.[10] Id. at 364, citing 8 U.S.C. §§ 1101(a)(43)(B), 1228, 1229b.

---

[10] As a matter of Massachusetts law, the holding in the Padilla case applies retroactively to the date on which deportation became "nearly an automatic result" of specific convictions for certain offenders, see Commonwealth v. Clarke, 460 Mass. 30, 45 (2011), quoting Padilla, 559 U.S. at 366, i.e., the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, Apr. 1, 1997. See Commonwealth v. Mercado, 474 Mass. 80, 81-82 (2016), in which this court concluded that the holding in the Padilla case applies retroactively to the effective date of another 1996 amendment to the Immigration and Nationality Act, the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (eff. Apr. 24, 1996), for convictions of certain controlled substances charges. See also Immigration & Naturalization Serv. v. St. Cyr, 533 U.S.

In Roberts, 472 Mass. at 363, the issue was whether civil confinement as a sexually dangerous person was "practically inevitable" such that notification of such consequences was required by the Sixth Amendment. In that case, neither the judge nor defense counsel warned the defendant of this possibility before he pleaded guilty to sex offenses that could serve as a predicate to civil commitment. Id. at 356. Although the defendant claimed ineffective assistance of counsel in his motion to withdraw his guilty plea, the motion judge had not ruled on the issue and it was not before the court. Id. at 363 n.10. We considered the judge's failure to give such warnings as a matter of due process. Id. at 362. We concluded that civil confinement was a collateral consequence of conviction because it was not "virtually mandatory" and, thus, the omission of such warnings did not rise to the level of constitutional error. Id. at 363-364. Specifically, we reasoned that, unlike deportation, the government has discretion whether to initiate civil confinement proceedings and, even if initiated, the government has to prove beyond a reasonable doubt that the

289, 292 (2001). Conversely, the Supreme Court ruled that the holding in the Padilla case does not apply retroactively to collateral challenges under Federal law. Chaidez v. United States, 133 S. Ct. 1103, 1105, 1111 (2013). We affirmed retroactive application of Padilla to collateral challenges under Massachusetts law after the Chaidez case. Commonwealth v. Sylvain, 466 Mass. 422, 424 (2013), S.C., 473 Mass. 832 (2016).

person is sexually dangerous, a result that includes more elements than the underlying conviction. Id. at 363.

The duty to register, however, does not require a separate step by a different authority before it attaches. Under our sex offender registry scheme, G. L. c. 6, §§ 178C-178Q, "there is a presumption that sex offenders must register." Commonwealth v. Ronald R., 450 Mass. 262, 264 (2007). The duty to register "commences with the conviction of a sex offense." Commonwealth v. Domino, 465 Mass. 569, 581 (2013). It is only after conviction and the associated duty to register has attached that a sex offender may obtain relief from registration. Id. Two statutory procedures provide relief in limited circumstances, but a defendant who receives a committed sentence, such as here, is unlikely to benefit from such relief. See G. L. c. 6, § 178E (e) (procedure for relief from registration by motion of Commonwealth); G. L. c. 6, § 178E (f) (relief from registration after discretionary findings by sentencing judge where sex offender "has not been sentenced to immediate confinement"). A sex offender is entitled to a hearing to determine his or her classification level, but that classification does not trigger the duty to register, it "simply defines the scope of the requirement already imposed upon conviction of an enumerated sex offense" (footnote omitted). Domino, supra. Accordingly, the duty to register as a sex offender is a "practically certain"

effect of a conviction for a sex offense as defined in G. L. c. 6, § 178C.

b. Impact and recognition of consequences. Under the second factor, the Supreme Court reviewed the "seriousness" of the consequence and States' statutory recognition of the "critical" need to provide warnings about such consequences. Padilla, 559 U.S. at 373-374 & n.15.

i. Severity of penalty. The Court recognized that deportation is a "particularly severe" penalty, because it is "the equivalent of banishment or exile." Padilla, 559 U.S. at 365, 373, quoting Delgadillo v. Carmichael, 332 U.S. 388, 390-391 (1947). In that regard, the Court recognized that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." Padilla, supra at 368, quoting Immigration & Naturalization Serv., 533 U.S. at 322.

The defendant argues that the continuing nature of sex offender registration and its limitations on a sex offender's liberty make the penalty of registration "particularly severe," such that it, too, is within the scope of the Sixth Amendment. The defendant focuses on certain aspects of the sex offender registry scheme: Internet dissemination of personal information, the requirement for homeless persons to register

every thirty days, and the previously enforced CPSL provision.[11]
These penalties, however, were first enacted or became more
severe after the defendant pleaded guilty in 2002.

Specifically, the Legislature enacted an amendment
requiring Internet dissemination of sex offender registration
information in 2003 and it was then only applicable to sex
offenders classified as level three, the highest risk category.[12]
St. 2003, c. 140, § 5.  The requirement for homeless sex
offenders to update their registration every thirty days was
enacted in 2010, at the same time that the Legislature required

---

[11] The defendant also argues that ancillary effects of
reduced employment opportunities and residency restrictions
increase the severity of the penalty.  These effects would not
be readily discernable and add little to the analysis.  Although
we recognize that convicted sex offenders face considerable
obstacles in securing employment, Commonwealth v. Canadyan, 458
Mass. 574, 577 n.8 (2010), this obstacle is not unique to those
convicted of sex offenses.  See Commonwealth v. Pon, 469 Mass.
296, 307 (2014) (recognizing that "criminal records have a
deleterious effect on access to employment").  Moreover, the
defendant has not alerted us to any residency restrictions that
were in effect in 2002 and only cites to Doe v. Lynn, 472 Mass.
521, 522 (2015), wherein we upheld the invalidation of a
residency restriction enacted in 2011.  We certainly agree that
residential segregation of sex offenders is a very harsh
penalty, but the defendant has presented no evidence that these
type of restrictions were in effect at the time that counsel was
advising the defendant about the consequences of his plea.

[12] In 2013, the Legislature expanded Internet dissemination
to include sex offenders classified as level two.  St. 2013,
c. 38, §§ 7, 9.  We limited this amendment to prospective
application.  Moe v. Sex Offender Registry Bd., 467 Mass. 598,
616 (2014).

homeless sex offenders to wear a global positioning system device. St. 2010, c. 256, §§ 40, 42. In 2002, the applicable timeframe was a less burdensome ninety days.[13] G. L. c. 6, § 178F, inserted by St. 1999 c. 74, § 2. Additionally, CPSL was not intertwined with the sex offender registry statute until 2006, when the Legislature amended G. L. c. 6, § 178H, to make CPSL a mandatory component of the sentence for a sex offender who had been convicted of certain sex offenses and was later convicted of failure to register. St. 2006, c. 139, §§ 26, 27. In sum, sex offender registration now has "consequences . . . that are far greater than was [previously] the case."[14] See Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 300 (2015); id. at 304-309 (describing increased requirements, penalties, and deleterious effects of sex offender registration that occurred between 1998, when Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90 [1998], was decided, and 2015).

---

[13] Moreover, the statutorily imposed sentence of imprisonment for first and second convictions of failure to register was less for homeless offenders than for other sex offenders in 2002. See G. L. c. 6, § 178H, inserted by St. 1999, c. 74, § 2.

[14] The amount of information that a sex offender was required to submit in 2002 also was not as extensive as it is today. St. 2003, c. 77 (names and addresses of institutions of higher education); St. 2006, c. 139, §§ 5-25 (secondary residences).

ii. Recognition of need for warnings. When analyzing whether the penalty for deportation was "particularly severe," the Supreme Court also considered whether States had recognized a "critical" need for warnings. Padilla, 559 U.S. at 373-374. The Court found it "significant" that the plea form used in Kentucky since 2003[15] (and statutory provisions in Massachusetts and other States) required judges to notify a defendant of possible immigration consequences. Id. at 373-374 & n.15.

We address three relevant statutes and court guidelines regarding sex offender registration warnings that guide our analysis of whether the courts and Legislature in Massachusetts recognized a "critical" need to advise defendants of the consequences of sex offender registration in 2002.

First, G. L. c. 6, § 178E (d), which was inserted by St. 1999, c. 74, § 2, and has been unchanged since that time, requires a judge to notify a defendant pleading guilty to an enumerated sex offense "that such plea may result in such sex offender being subject to the provisions of sections 178C to 178P, inclusive" and to require the defendant to acknowledge receipt of such warning in writing. The statute provides, however, that noncompliance with this provision "shall not be

---

[15] Final judgment on the guilty plea at issue in Padilla entered in 2002. Commonwealth v. Padilla, 253 S.W.3d 482, 483 (Ky. 2008).

grounds to vacate or invalidate the plea." Id. The Appeals Court recognized that "it may appear anomalous to require such a warning but to provide that no consequence follows if the requirement is not met," but concluded that the court was "constrained by the wording of the statute" when rejecting a defendant's motion to withdraw her guilty plea on the basis of not having been advised by the judge or defense counsel that she could be required to register as a sex offender. Shindell, 63 Mass. App. Ct. at 506. Accordingly, this statute does recognize some benefit to advising a defendant about sex offender registration, but does not appear to recognize a "critical" need to do so on account of the Legislature explicitly stating that there is no consequence for noncompliance.[16]

---

[16] We recognize that the Committee for Public Counsel Services, as noted in its amicus brief and by the defendant, has required defense counsel to "advise the client of the consequences of conviction, including . . . Sex Offender Registration Act [G. L. c. 6, §§ 178C et seq.,] . . . requirements." This is certainly a best practice for defense attorneys, but it is not determinative of whether the Sixth Amendment applies. The analytical framework by the Supreme Court supports this approach. In Padilla, 559 U.S. at 367, the Supreme Court recognized that the "weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." The Supreme Court, however, had already determined that deportation was within the scope of the Sixth Amendment when it considered relevant professional norms about the scope of advice that should be given. See Padilla, supra at 364-367 (analyzing Sixth Amendment applicability in part two and first prong of ineffective assistance of counsel analysis in part three). See also Chaidez, 133 S. Ct. at 1112 (reasoning related to direct

Second, Mass. R. Crim. P. 12 describes the procedure for entering a guilty plea. At the time the defendant pleaded guilty, a judge was not required to include any warnings about sex offender registration. Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 378 Mass. 866 (1979). The rule was revised in 2004 to include, if applicable, a notification that a defendant may be "required to register as a sex offender." Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 442 Mass. 1511 (2004), and Reporters' Note to Rule 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1448-1451 (LexisNexis 2015-2016). This revision modifies judicial practice and indicates a recognition that the need to provide warnings to defendants became more critical after the Legislature amended the sex offender statutes in 2003 by requiring Internet dissemination of registration information. St. 2003, c. 140, § 5. In Roberts, 472 Mass. at 364, we concluded that a defendant may withdraw a guilty plea on the basis of a judge's omission under rule 12 so long as he or she can demonstrate prejudice. We recognized that the enumerated warning in rule 12 did not transform a collateral consequence of conviction into a direct one for constitutional purposes, but we provided an avenue by which a defendant who did

and collateral distinction "came before we conducted a Strickland analysis [by examining professional norms and so forth]").

not receive warnings that are enumerated under rule 12 may

obtain relief.[17]   Id. at 362, 364.

Third, the District Court "tender of plea" form contains a

"waiver of rights" section where a defendant is asked to

acknowledge, by signature, that he or she has been warned of the

consequences of a guilty plea.  Defense counsel must also

acknowledge that he or she has explained the consequences of

waiving such rights to the defendant.  At the time of the

defendant's plea, the form contained a warning about deportation

but not about sex offender registration.  The current form

requires a notification about the sex offender registry statute.

_____

[17] The defendant here could not prevail on a claim based on
Mass. R. Crim. P. 12 (c) (3) (B), as appearing in 378 Mass. 866
(1979), because the rule did not contain notifications about sex
offender registration at the time of his plea. In any event, the
judge properly found, based on a notation on the docket and her
custom and practice at the time of the plea, that the defendant
had received notifications about sex offender registration
during the plea colloquy.  The defendant filed the underlying
motion to withdraw his guilty plea, under Mass. R. Crim. P.
30 (b), approximately eleven years after he pleaded guilty.  The
record reflects that the court does not have a tape or
transcript of the plea colloquy.  Where, as here, a defendant
challenges a guilty plea under rule 30 "after court records have
been destroyed lawfully pursuant to court rules, the defendant
bears the burden of proof." Commonwealth v. Grannum, 457 Mass.
128, 133 (2010), citing Commonwealth v. Lopez, 426 Mass. 657,
661-662, 664-665 (1998).  "In such cases, the defendant must
present evidence sufficient to rebut a presumption that the plea
proceeding was conducted correctly." Grannum, supra.  The "plea
judge's statement of customary practice can be necessary and
probative." Commonwealth v. Tokarev, 87 Mass. App. Ct. 819, 821
(2015), quoting Commonwealth v. Diaz, 75 Mass. App. Ct. 347, 351
(2009).

Although we have recognized that statutory warnings and notification on a printed tender of plea form are "not an adequate substitute" where defense counsel has a professional obligation to provide advice on the subject, Clarke, 460 Mass. at 48 n.20, such mandates are relevant to a determination of how critical the need is to advise clients of certain consequences. See Padilla, 559 U.S. at 373-374 & n.15.

4. Conclusion. We are not presented with the occasion to consider whether the sex offender registry scheme as it exists today would fall within the ambit of the Sixth Amendment right to counsel. We conclude only that the sex offender statutory scheme as it existed in 2002 did not. Accordingly, the judge did not abuse her discretion in denying the defendant's motion to withdraw his guilty plea.[18],[19]

Judgment affirmed.

---

[18] In some cases, we have interpreted the rights under art. 12 to be more expansive than those guaranteed by the Sixth Amendment. See Commonwealth v. Mavredakis, 430 Mass. 848, 858 (2000), citing Commonwealth v. Hodge, 386 Mass. 165, 169 (1982). The defendant presents no compelling reason we should do so here.

[19] Because we conclude that advice regarding sex offender registration requirements under G. L. c. 6, §§ 178C-178Q, was not within the scope of a defendant's constitutional right to counsel, we do not analyze the merits of the defendant's ineffective assistance of counsel claim.