APPEALS COURT 
 
 COMMONWEALTH vs. ALBERT J. ERLER

 
 Docket:
 24-P-983
 
 
 Dates:
 April 9, 2025 – October 10, 2025
 
 
 Present:
 Ditkoff, Singh, & Smyth, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Motor Vehicle, Operating under the influence. Alcoholic Liquors, Motor vehicle. Evidence, Intoxication. Firearms. Practice, Criminal, Assistance of counsel, Plea, New trial, Motion in limine, Continuance without a finding.
 
 

       Complaint received and sworn to in the
Lynn Division of the District Court Department on January 6, 2022. 
      The case was tried before James L.
LaMothe, Jr., J., and a motion for a new trial was heard by Ina Howard-Hogan,
J. 
      Neil S. Tassel for the defendant.
      Zachary D. Grube, Assistant District
Attorney, for the Commonwealth.
      DITKOFF, J.  The defendant, Albert J. Erler, appeals from
his conviction, after a jury trial in the District Court, of operating a motor
vehicle while under the influence of intoxicating liquor (OUI), G. L.
c. 90, § 24 (1) (a) (1), and the denial of his motion
for a new trial.  We reaffirm our holding
in Commonwealth v. Indelicato, 40 Mass. App. Ct. 944, 945 (1996), that failure
to advise a defendant about the collateral consequences of a guilty plea on the
right to possess firearms does not constitute ineffective assistance of
counsel.  Further, we reject the
defendant's other claims of ineffective assistance of counsel.  Finally, concluding that the judge acted
within his discretion in admitting the name of the establishment where the
defendant drank and that the evidence was sufficient to show that he was impaired,
we affirm.
      1. 
Background.  At approximately 1:18
A.M. on January 6, 2022, a State trooper observed the defendant's motor
vehicle, traveling on Route 1, "swerving back and forth between the right
lane and the middle lane."  The
defendant also appeared to be sending text messages while driving.  The trooper stopped the defendant.
      Upon approaching the motor vehicle, the
trooper "immediately smelled an overwhelming odor of intoxicating
liquor."  The trooper observed that
the defendant "had bloodshot, glassy eyes."  The trooper asked the defendant where he was
coming from, and the defendant paused for approximately ten seconds and then
said, "I'm trying to think." 
Finally, he stated that "he was out with friends getting food and
drinks."  Eventually he stated that
he was coming from the Golden Banana, apparently a well-known "gentlemen's
club."  See Cabaret Enters., Inc. v.
Alcoholic Beverages Control Comm'n, 393 Mass. 13, 14 (1984).  He stated that he had consumed "four to
five vodka tonics."  Throughout the
conversation, the defendant had slurred speech, and the trooper continued to
smell intoxicating liquor.
      The trooper arrested the defendant and
transported him to a State police barracks. 
When the trooper removed the defendant from his cruiser, he noticed
"an overwhelming odor of intoxicating liquor that was now in my cruiser
that was not in the cruiser prior to him being placed there."
      After a trial, a jury convicted the
defendant of OUI.  Several months later,
the defendant filed a motion for a new trial, alleging that defense counsel was
ineffective for not advising him to consider alternatives to going to trial,
such as a continuance without a finding. 
Defense counsel averred that he knew the defendant had a license to
carry firearms and "did not discuss with him the repercussions of a
conviction versus a continuance without a finding would have, particularly on
his right to own firearms or maintain a license to carry firearms."  The trial judge having recently retired, a
different judge (motion judge) denied the motion.  This appeal, from both the conviction and the
denial of the motion for a new trial, followed.
      2. 
Ineffective assistance of counsel. 
a.  Standard of review.  "[W]e review the denial of a motion for
a new trial for 'a significant error of law or other abuse of
discretion.'"  Commonwealth v. Diaz,
100 Mass. App. Ct. 588, 592 (2022), quoting Commonwealth v. Duart, 477 Mass.
630, 634 (2017), cert. denied, 584 U.S. 938 (2018).  "To prevail on a motion for a new trial
claiming ineffective assistance of counsel, a defendant must show that there
has been a 'serious incompetency, inefficiency, or inattention of counsel --
behavior of counsel falling measurably below that which might be expected from
an ordinary fallible lawyer,' and that counsel's poor performance 'likely
deprived the defendant of an otherwise available, substantial ground of
defence.'"  Commonwealth v.
Encarnacion, 105 Mass. App. Ct. 46, 57 (2024), quoting Commonwealth v. Millien,
474 Mass. 417, 429-430 (2016).  The
Supreme Judicial Court has held that, "if the [plea] offer is rejected
because of the ineffective assistance of counsel, the fact that the defendant
subsequently receives a fair trial does not ameliorate the constitutional harm
that occurred in the plea consideration process."  Commonwealth v. Mahar, 442 Mass. 11, 14-15
(2004).  Here, in the related context
where there was no plea offer, "the defendant must demonstrate a
reasonable probability that the prosecution would have made an offer, that the defendant
would have accepted it, and that the court would have approved it."  Commonwealth v. Marinho, 464 Mass. 115, 129
(2013).
      b. 
Advice about firearm licensure. 
"There is no doubt that counsel must provide constitutionally
effective assistance when advising a defendant about the direct consequences of
a guilty plea."  Commonwealth v.
Minon, 102 Mass. App. Ct. 244, 247 (2023). 
Direct consequences include the actual sentence and the waiver of rights
against self-incrimination, to a jury trial, and to confront one's
accusers.  Id.
      OUI is a misdemeanor punishable by up to
two and one-half years in a house of correction, G. L. c. 90,
§ 24 (1) (a) (1), first par.  For this reason, a conviction for OUI
disqualifies a defendant from obtaining a firearms identification card or a
license to carry firearms.  G. L.
c. 140, § 121F (j) (i) (B), as inserted by St. 2024,
c. 135, § 32.[1]  It also renders it
illegal under Federal law for a defendant to possess a firearm or for anyone to
sell or give one to that defendant.  18
U.S.C. §§ 921(a)(20)(B), 922(d)(1), (g)(1).  After five years of the most recent punitive
measure stemming from the disqualifying conviction, a defendant may petition
the firearm licensing review board for the restoration of the ability to obtain
a firearms license.  G. L.
c. 140, § 130B (d).[2] 
Accord 18 U.S.C. § 921(a)(20), second par.  Conversely, a continuance without a finding
does not qualify as a conviction, see G. L. c. 140, § 121;
Commonwealth v. Beverly, 485 Mass. 1, 7 (2020); accord 18 U.S.C.
§ 921(a)(20), second par., although in theory it could be a basis for a
separate finding of unsuitability to obtain either a firearms identification
card or a license to carry.  G. L.
c. 140, § 121F (k), as inserted by St. 2024, c. 135, § 32.[3]
      Here, the defendant avers that defense
counsel "did not tell me that I would lose my right to possess firearms if
I were convicted" and that he "would have admitted to sufficient
facts and accepted a continuance without a finding had I been advised that it
would ensure that I did not lose my firearm rights."  Defense counsel, in turn, averred that he did
not discuss the impact of the various options on the defendant's right to
possess firearms.  Based on this, the
defendant argues that defense counsel was ineffective in failing to
affirmatively advise him that a conviction would cause him to lose his right to
possess firearms and to advise him to seek a continuance without a finding.
      We rejected this argument in Commonwealth
v. Indelicato, 40 Mass. App. Ct. 944 (1996). 
There, the defendant pleaded guilty to assault and battery and carrying
a dangerous weapon, both misdemeanors punishable by up to two and one-half
years in a house of correction.  Id. at
944.  Plea counsel advised the defendant
"that his guilty pleas 'would not preclude him from seeking a license to
carry a firearm,'" id., which was true under then-existing State law.  See G. L. c. 140, § 129B,
first par., as amended by St. 1969, c. 799, § 7; G. L.
c. 140, § 131, second par., as amended by St. 1986, c. 481,
§ 2.  It was not, however, true under
Federal law, which already prohibited individuals convicted of State
misdemeanors carrying punishment of more than two years of imprisonment from
possessing firearms.  18 U.S.C.
§§ 921(a)(20), 922(g)(1).  We stated
that ineffectiveness does not generally exist where "the mistaken or
incomplete advice concerns a matter that is entirely collateral to the charges
pending for plea or trial," and that "the advice [defense counsel]
gave to the defendant, while misleading as to a collateral consequence of the
plea, does not amount to a failing that was 'grave and fundamental.'"  Indelicato, supra at 945, quoting
Commonwealth v. Norman, 27 Mass. App. Ct. 82, 86, S.C., 406 Mass. 1001 (1989).  In doing so, we followed well-settled law
that "a defendant need not be advised of contingent or collateral
consequences" of a guilty plea. 
Commonwealth v. Hason, 27 Mass. App. Ct. 840, 843 (1989).
      The defendant advances two reasons why we
should reconsider Indelicato.  First, he
points out that the United States Supreme Court in Padilla v. Kentucky, 559
U.S. 356, 360 (2010), established that failure to advise a defendant of certain
immigration consequences of a guilty plea constitutes ineffective assistance of
counsel.  The Court in Padilla, however,
did not purport to eliminate the distinction between direct and collateral
consequences, but rather held that "[d]eportation as a consequence of a
criminal conviction is, because of its close connection to the criminal
process, uniquely difficult to classify as either a direct or a collateral
consequence."  Id. at 366.  Accordingly, the Supreme Judicial Court has
"interpreted the Padilla case not as an abrogation of the direct and
collateral consequence distinction, . . . but simply as clarification
that deportation is not '"collateral" to the criminal justice
process.'"  Commonwealth v.
Sylvester, 476 Mass. 1, 7 (2016), quoting Marinho, 464 Mass. at 124.  Instead, it remains the case that "[a]dvice
as to collateral consequences . . . has been considered outside the
ambit of the right to the effective assistance of counsel."  Minon, 102 Mass. App. Ct. at 247.  Accord Commonwealth v. Henry, 488 Mass. 484,
497 (2021).
      Second, the defendant argues that loss of
the right to possess a firearm is no longer a collateral consequence now that
the United States Supreme Court has recognized an individual constitutional
right to keep and bear arms.[4]  See
McDonald v. Chicago, 561 U.S. 742, 767-770, 778 (2010); District of Columbia v.
Heller, 554 U.S. 570, 592 (2008).  To be
sure, the fact that deportation is a "particularly severe" penalty
factored into the Supreme Court's decision that deportation was not properly
classified as collateral.  Padilla, 559
U.S. at 365, 373.  Accord Sylvester, 476
Mass. at 10.  Nonetheless,
"[c]riminal convictions can carry a wide variety of consequences other
than conviction and sentencing, including civil commitment, civil forfeiture,
the loss of the right to vote, disqualification from public benefits,
ineligibility to possess firearms, dishonorable discharge from the Armed
Forces, and loss of business or professional licenses."  Minon, 102 Mass. App. Ct. at 248, quoting
Padilla, 559 U.S. at 376 (Alito, J., concurring).
      We recognize the importance of the
constitutional right to bear arms, but all constitutional rights are lost when
a noncitizen is removed from the country. 
The possibility of indefinite civil commitment as a sexually dangerous
person is a particularly severe consequence, but it remains a collateral consequence
that the defendant need not be aware of to render a voluntary and intelligent
guilty plea.  See Commonwealth v.
Roberts, 472 Mass. 355, 363-364 (2015) ("The Sixth Amendment [to the
United States Constitution] analysis in Padilla did not erode the well-settled
principle that a judge's failure to inform a defendant of a collateral
consequence -- such as civil confinement -- is, without more, insufficient to
render a defendant's guilty plea involuntary under the due process
clause").  Similarly, restrictions
on earning good time, Commonwealth v. Brown, 6 Mass. App. Ct. 844, 844 (1978),
or calculations of parole eligibility, Commonwealth v. Santiago, 394 Mass. 25,
30 (1985), are collateral consequences despite directly affecting a defendant's
liberty.  One could have a spirited
debate whether the right to bear arms is more or less important than the right
to vote, the right to property, or the right to pursue a livelihood, see Minon,
102 Mass. App. Ct. at 248, but the point remains that the undeniable importance
of the right to keep and bear arms does not remove it from the ranks of
collateral consequences that a criminal defendant need not be informed of to
render a valid guilty plea.  Accordingly,
seeing no reason to depart from our holding in Indelicato, we affirm that a
defendant need not be affirmatively informed by counsel of the consequences of
a conviction on the right to possess a firearm prior to deciding whether to
enter into a plea agreement.
      c. 
Trial ineffectiveness.  The
defendant's argument that counsel was ineffective in failing to present the
jury with the defendant's booking photograph or the video recording of the
booking process falters on the fact that the defendant did not present either
the photograph or the video recording to the motion judge (or to us, for that
matter).  Without seeing the photograph
or the video recording, the motion judge had no way to assess whether either
would have provided the defendant with a substantial defense.  See Commonwealth v. Alvarez, 62 Mass. App.
Ct. 866, 870 (2005), quoting Commonwealth v. Collins, 36 Mass. App. Ct. 25, 30
(1994) (without affidavits from witnesses not interviewed, "the judge was
'unable to rule on the question of whether [the witnesses'] testimony would
likely have made a material difference'"). 
Accordingly, the defendant failed to show that he was prejudiced by any
shortcoming in this respect.
      We also discern no ineffectiveness in
counsel's handling of the defendant's admitted drinking.  During attorney-conducted voir dire of the
jury venire, counsel asked several of the prospective jurors some version of
whether they would convict solely on evidence that the defendant had "had
a couple of drinks."  When one juror
asked for clarification regarding what he meant, counsel said, "two,
three, four."  Although the primary
meaning of "couple" is exactly two, the word also can mean "[a]
few."  Merriam-Webster's Collegiate
Dictionary 286 (11th ed. 2020).  This
tactic was a reasonable part of defense counsel's strategy to minimize the
impact of the defendant's admitted drinking. 
After the trooper testified that the defendant admitted to having four
to five drinks, counsel elicited that the trooper did not ask the defendant
when he had those drinks and that it could have been as much as seven hours
before the stop.  Counsel asserted both
in his opening statement and his closing argument that the evidence had little
relevance because of the indefinite time frame. 
Seeking to eliminate jurors who would not be receptive to counsel's
efforts to minimize the impact of the admitted drinking was not
"manifestly unreasonable." 
Commonwealth v. Robinson, 493 Mass. 775, 789 (2024), quoting
Commonwealth v. Henderson, 486 Mass. 296, 302 (2020).
      Finally, we discern no prejudice from
counsel's failure to introduce evidence that the defendant had a pierced tongue
and stud at the time of the stop. 
Counsel elicited from the trooper that he had "no idea how [the
defendant] speaks normally" and that he "do[es] not know if he speaks
slurred prior" to drinking.  Putting
aside the fact that the defendant has identified no way in which he could have
established that the defendant had a pierced tongue and stud at the time of the
stop, that fact would have added little to the defense.  See Commonwealth v. Brown, 71 Mass. App. Ct.
743, 747 (2008) (no ineffectiveness in failure to present cumulative evidence).
      3. 
Prejudicial evidence.  The trial
judge denied the defendant's motion in limine to exclude testimony that the
establishment at which the defendant had consumed alcohol was the Golden
Banana.  Accordingly, the issue is
preserved.  See Commonwealth v. Bohigian,
486 Mass. 209, 219 (2020). 
"[W]hether evidence is relevant and whether its probative value is
substantially outweighed by its prejudicial effect are matters entrusted to the
trial judge's broad discretion and are not disturbed absent palpable
error."  Commonwealth v. Pardee, 105
Mass. App. Ct. 496, 498 (2025), quoting Commonwealth v. Sylvia, 456 Mass. 182,
192 (2010).  A defendant's report of the
number of alcoholic drinks consumed is relevant to show the source and possible
degree of intoxication, and details such as the location add to the credibility
of the report.  See, e.g., Commonwealth
v. Wolfe, 478 Mass. 142, 143 (2017) ("defendant admitted that he had been
at a nightclub where he had consumed 'a few' drinks"); Commonwealth v.
Palacios, 90 Mass. App. Ct. 722, 723 (2016) (defendant reported having
"two to three drinks"); Commonwealth v. Bigley, 85 Mass. App. Ct.
507, 510 (2014) (defendant reported having "a few drinks" at
"the Riviera Café on Crapo Street in Bridgewater").  The trial judge here addressed the possible
prejudice from the use of "Golden Banana" by asking the prospective
jurors whether they "have any moral objections to gentlemen's clubs in
particular or perceive them to be immoral."  Minimizing the prejudicial nature of evidence
through voir dire questions is a tried and true method for judges to address
such issues.  See, e.g., Commonwealth v. Phim,
462 Mass. 470, 477-478 (2012); Commonwealth v. Swafford, 441 Mass. 329, 332 (2004).  We discern no palpable error in the trial
judge's handling of this evidence.
      4. 
Sufficiency of the evidence. 
"[W]e consider the evidence introduced at trial in the light most
favorable to the Commonwealth, and determine whether a rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt."  Commonwealth v. Lagotic,
102 Mass. App. Ct. 405, 407 (2023), quoting Commonwealth v. Tsonis, 96 Mass.
App. Ct. 214, 216 (2019).  "The
inferences that support a conviction 'need only be reasonable and possible;
[they] need not be necessary or inescapable.'"  Commonwealth v. Quinones, 95 Mass. App. Ct.
156, 162 (2019), quoting Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303
(2016).
      Here, the trooper testified that the
defendant was driving erratically, swerving between lanes.  See Tsonis, 96 Mass. App. Ct. at 219 (erratic
driving was evidence of impairment).  He
had "an overwhelming odor of intoxicating liquor" and
"bloodshot, glassy eyes."  See
Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 350, 354 (2015) (glassy,
bloodshot eyes and strong odor of alcohol were evidence of impairment);
Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011) ("slurred
speech, belligerent demeanor, strong odor of alcohol, poor balance, and glassy,
bloodshot eyes" were evidence of impairment).  That there was a possible alternative
explanation for the defendant's erratic driving does not defeat sufficiency, as
the jury could reasonably infer that the erratic driving was caused by the
defendant's admitted alcohol consumption. 
See Commonwealth v. Burgos, 462 Mass. 53, 67-68, cert. denied, 568 U.S.
1072 (2012).  In combination, the
evidence was sufficient to permit the jury to find that the defendant was
impaired.  See Commonwealth v. Gallagher,
91 Mass. App. Ct. 385, 392-393 (2017).
Judgment
affirmed.  
Order denying
motion for a new trial affirmed.

footnotes

[1] At the time
of the trial, these prohibitions were in G. L. c. 140,
§ 129B (1) (i) (B), as amended by St. 2014, c. 284,
§ 30, and G. L. c. 140, § 131 (d) (i) (B),
as amended by St. 2014, c. 284, § 48. 
This state of affairs has existed since 1998.  See St. 1998, c. 180, §§ 29, 41;
St. 1994, c. 25, § 3.

[2] Specifically,
five years must have passed since release from incarceration and termination of
parole or probation supervision. 
G. L. c. 140, § 130B (d) (ii).  Certain misdemeanors, such as domestic
assault, are excluded.  G. L.
c. 140, § 130B (d) (i). 
This statute was added in 2004. 
St. 2004, c. 150, § 9.

[3] At the time
of trial, these provisions were in G. L. c. 140, § 129B (1 1/2),
inserted by St. 2014, c. 284, § 30, and G. L. c. 140,
§ 131 (d), third par., as amended by St. 2022, c. 175, § 9.

[4] The defendant
also argues in passing that loss of the right to possess firearms is not a
collateral consequence because the loss is automatic.  That was the case in 1996 (indeed, unlike
now, then the loss was permanent), and thus is not a reason to depart from the
holding in Indelicato.  In any event, the
Supreme Judicial Court held in Sylvester, 476 Mass. at 8-10, that an automatic
consequence, such as sex offender registration, still can be collateral.  What makes it a collateral consequence is
that it "flows or may flow secondarily from conviction or
incarceration."  Commonwealth v.
Rodriguez, 52 Mass. App. Ct. 572, 578-579 (2001).