NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-64

COMMONWEALTH

vs.

DAVID A. PAGAN, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2016, as part of a guilty plea to multiple charges arising from the same course of events, the defendant David Pagan admitted to sufficient facts to warrant a guilty finding on a charge of operation of a motor vehicle while under the influence of intoxicating liquor (OUI), and also pleaded guilty to charges of resisting arrest and threatening to commit a crime. The Commonwealth nol prossed the remaining charges against the defendant, including assault and battery on a police officer. In 2021, the defendant filed a motion to withdraw his pleas and admission, under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), claiming that had he known that the breathalyzer test in his case was inadmissible -- due to the misconduct of the State police Office of Alcohol Testing (OAT), see Commonwealth v. Hallinan, 491 Mass. 730, 745-751

(2023) -- he would not have admitted to sufficient facts as to the charge of OUI or otherwise pleaded guilty. The motion was denied, and the defendant appeals. We affirm.

1. Background.[1] a. Incident. At around 4 A.M. on April 23, 2016, a Palmer police officer was dispatched to a report of a single vehicle crash. The report was made by the defendant himself, who stated that an unidentified truck came into his lane of travel and ran him off the road. When the officer arrived, the defendant's vehicle was found in the opposite lane with the engine running. There was significant damage to the driver's side of the vehicle, the vehicle's bumper was damaged, and the front passenger's side tire was completely separated from the vehicle.

The defendant was upset and was pacing back and forth. When the officer asked the defendant if he needed medical attention, the defendant became angry and started swearing, stating, "[D]o I fucking look alright[?] [M]y fucking new car is destroyed." When the officer shined a flashlight into the defendant's car, the defendant swore at the officer, yelling, "[W]hat the fuck are you looking for? . . . I don't fucking have anything in there[.] [W]hy are you looking in there when

---

[1] No transcript of the admission hearing is available. However, the facts herein are found in the police report and breath test report, and are not in dispute between the parties.

2

you should be looking for the asshole that ran me off the road[?]"  The defendant "ripped open" the driver's side door, stating, "[Y]ou want to fucking search it you asshole, I don't have shit in there."  The defendant then went to his trunk, stating, "[F]uck that shit[.]  I'm getting my jack so I can change my tire," despite the tire being detached from the car and the axle being broken.  Throughout the interaction, a strong odor of alcohol came from the defendant's breath.

The officer then asked the defendant to perform field sobriety tests.  In response, the defendant clenched his fists, advanced on the officer and pushed him, asking the officer if he "was fucking kidding him."  When the defendant advanced on the officer a second time, the officer grabbed the defendant's arms and, with the assistance of another officer, gained control of the defendant, who tensed both of his arms and refused to cooperate with the officer's instructions.  Eventually, the officers were able to handcuff the defendant and move him into a police cruiser for transport to the police station.

While proceeding to the station, there was a strong odor of alcohol inside the cruiser.  Throughout the transport, the defendant screamed, kicked the seat, and made several threats against the responding officer.  For example, the defendant stated that when he "was bailed out," he was going to kill the

3

officer, his wife, and his children.  The defendant also stated that he was going to "fuck [the officer's] mother."

The defendant's behavior did not moderate at the police station.  After refusing to sign paperwork related to a breath test, the defendant stated several times that he wanted to "take the breath test to prove he wasn't drunk and wanted an apology when it came back negative."  The defendant was then administered a breath test using a Draeger Alcotest 9510 breathalyzer device.  The result of the test was 0.14 percent blood alcohol content, i.e., above the legal limit.  See G. L. c. 90, § 24 (1) (a) (1).  As detailed in the breath test report, the responding officer noticed that the defendant was unsteady on his feet, the defendant's speech was slurred, and the defendant's eyes were glassy and bloodshot.

There was no physical or corroborating evidence to suggest that the defendant was run off the road by another vehicle.  Only one set of tire marks was seen at the location of the crash.  Other officers responding to the scene shortly after the crash did not see any vehicles matching the description of the vehicle that the defendant gave.  The responding officer stated in his report that, based on the tire marks, it seemed that the defendant was traveling too fast for the road conditions, lost control of his car, traveled up a hill, hit a telephone pole, and subsequently came back down the hill into the roadway.

4

b. Procedural history. On April 25, 2016, the defendant was charged in the District Court with OUI, negligent operation of a motor vehicle, resisting arrest, threatening to commit a crime, disorderly conduct, and assault and battery on a police officer. In May 2016, the defendant pleaded guilty to the charges of resisting arrest and threatening to commit a crime, and admitted to sufficient facts to warrant a guilty finding on the charge of OUI. In return, the Commonwealth nol prossed the remaining charges against the defendant. The defendant did not then receive any jail time; instead, the OUI charge was continued without a finding for one year under G. L. c. 90, § 24D, the defendant's license was suspended for forty-five days, and the defendant was sentenced to one year of probation.[2]

In September of 2021, the defendant moved to "withdraw [his] plea," under Mass. R. Crim. P. 30 (b), arguing that newly discovered evidence showed egregious government misconduct by OAT with respect to the management and handling of the device used to test his blood alcohol level. The defendant argued that had he known of such evidence there is a reasonable probability that he would not have admitted to sufficient facts as to the OUI charge or pleaded guilty to the other charges, and instead would have proceeded to trial. After a nonevidentiary hearing,

[2] The defendant did receive jail time in 2017 after he violated probation and a guilty finding entered on the OUI charge.

5

on August 18, 2022, the motion judge, who also presided over the defendant's pleas and admission, denied the defendant's motion.

The defendant appealed the denial.  Briefing and argument in this court were stayed pending resolution in the Supreme Judicial Court of Hallinan, 491 Mass. 730, which addressed fundamentally similar issues regarding the conduct of OAT with respect to the Alcotest device, and the consequences for criminal proceedings in which certain breathalyzer evidence was relied on.  Hallinan has now been decided, and the court ruled, among other things, that due to government misconduct regarding the Draeger Alcotest 9510 breathalyzer device, breathalyzer evidence obtained from this device prior to April 18, 2019, was inadmissible, and that any conviction where such evidence was relied on is subject to being revisited, utilizing the two-pronged test articulated in Commonwealth v. Scott, 467 Mass. 336, 346 & n.5 (2014), citing Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006) (Scott-Ferrara test).  The question before us is whether the judge was required to grant the defendant's motion to withdraw his pleas and admission in light of the court's reasoning in Hallinan, supra at 733-751.

2.  Discussion.  A motion for a new trial under Mass. R. Crim. P. 30 (b) is the proper vehicle to challenge the validity of a plea and an admission to sufficient facts.  Hallinan, 491 Mass. at 744.  "A motion to vacate an admission to sufficient

6

facts is treated as a motion for a new trial." Commonwealth v. Muniur M., 467 Mass. 1010, 1011 (2014).[3] "A judge may grant the defendant's motion only if it appears that justice may not have been done" (quotations and citation omitted). Commonwealth v. Furr, 454 Mass. 101, 106 (2009).

Under the two-pronged Scott-Ferrara test, "[t]o prevail on a claim that government misconduct induced a defendant to admit to sufficient facts, the defendant must show both [(1)] that egregiously impermissible conduct . . . by government agents . . . antedated the entry of his [or her] plea and [(2)] that the misconduct influenced his [or her] decision to plead guilty or, put another way, that it was material to that choice" (quotations omitted). Hallinan, 491 Mass. at 744-745, quoting Scott, 467 Mass. at 346. Under the second prong of the Scott-Ferrara test, the defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of OAT's misconduct. See Hallinan, supra at 750. When considering the second prong, the motion judge evaluates whether it would have been rational to reject the plea deal under the

---

[3] Because an admission to sufficient facts to warrant a finding of guilty "exposes a defendant to some of the same collateral consequences as a guilty plea," we treat the admission the same as a guilty plea for purposes of this discussion. Hallinan, 491 Mass. at 731 n.1.

7

totality of the circumstances in the defendant's individual case.[4]  See id.; Scott, 467 Mass. at 356.

"We review the denial of a motion to withdraw a guilty plea to determine whether there has been a significant error of law or other abuse of discretion" (citation omitted).  Commonwealth v. Lastowski, 478 Mass. 572, 575 (2018).  "Particular deference is to be paid to the rulings of a motion judge who served as the [plea] judge in the same case" (citation omitted).  Commonwealth v. Sylvester, 476 Mass. 1, 6 (2016).

As noted, the motion judge's decision here predates Hallinan, but the judge's analysis is not inconsistent with Hallinan's reasoning.  In Hallinan, 491 Mass. at 731, 749-751, 755, the Supreme Judicial Court reversed the denial of a defendant's motion to withdraw her admission to sufficient facts of OUI, second offense, after concluding that she satisfied both prongs of the Scott-Ferrara test.  As to the first prong, the

---

[4] To evaluate the second prong of the Scott-Ferrara test, five factors are to guide the analysis:
> "(1) whether evidence of the government misconduct could have detracted from the factual basis used to support the guilty plea, (2) whether the evidence could have been used to impeach a witness whose credibility may have been outcome-determinative, (3) whether the evidence is cumulative of other evidence already in the defendant's possession, (4) whether the evidence would have influenced counsel's recommendation as to whether to accept a particular plea offer, and (5) whether the value of the evidence was outweighed by the benefits of entering into the plea agreement."

Hallinan, 491 Mass. at 750, quoting Scott, 467 Mass. at 355.

8

Supreme Judicial Court concluded that defendants who pleaded guilty to OUI based on breath test results from a Draeger Alcotest 9510 breathalyzer device obtained before April 18, 2019, are entitled to a conclusive presumption "that the first prong of the Scott-Ferrara test is satisfied, and the existence of egregious government misconduct that antedated the defendant's plea has been established." Id. at 755, citing Scott, 467 Mass. at 346. See Ferrara, 456 F.3d at 290-291. Such defendants may proceed on motions to withdraw guilty pleas "without having to establish egregious government misconduct in each case." Hallinan, supra at 731.

There is no dispute that the defendant here is entitled to the Hallinan conclusive presumption as to prong one. See Hallinan, 491 Mass. at 749-750. The question in this appeal, accordingly, centers on whether the motion judge's denial was erroneous as to prong two, the prejudice prong. The defendant points out that the Hallinan court found the prejudice prong satisfied, but in our view, Hallinan is distinguishable on its facts.

Hallinan, 491 Mass. at 732, involved a stop at a sobriety checkpoint. The defendant Hallinan was not involved in an accident, nor was she seen operating her vehicle erratically. Id. At the checkpoint troopers noted that Hallinan's eyes were red and glassy, an odor of "intoxicating liquor" was coming from

9

her vehicle, and her speech was slurred. Id. Hallinan "seemed dazed" and admitted to consuming three alcoholic drinks. Id. Hallinan performed a series of field sobriety tests but was unable to complete them successfully. Id. Hallinan was then administered an Alcotest 9510 breath test, and the results showed a blood alcohol content of 0.23 percent. Id.

Hallinan subsequently admitted to sufficient facts to support a finding of guilty of OUI, second offense, the only charge she faced. Hallinan, 491 Mass. at 732. Following Hallinan's admission, the matter was continued without a finding for two years, Hallinan was placed on probation, and her driver's license was suspended for two years. Id.

Hallinan thereafter moved to withdraw her admission to sufficient facts, claiming that her admission resulted from government misconduct related to the breathalyzer device used to test her blood alcohol content. Hallinan, 491 Mass. at 732-733. Though the motion judge found that defendant Hallinan satisfied the second prong of the Scott-Ferrara test, the judge denied the motion due to Hallinan not showing a nexus between government misconduct involving the breathalyzer device and her case, the first prong of the test. Id. at 731-733, 751. Importantly, on appeal the Supreme Judicial Court found no error in the motion judge's determination that Hallinan satisfied the prejudice prong. Id. at 750-751. The court agreed that leaving aside the

10

breath test result, "the disposition that [Hallinan] received was not so favorable that the benefits of the plea outweighed the value of the [breathalyzer] evidence." Id. at 751.

Applying the Scott-Ferrara test to the facts here, we discern no abuse of discretion in the motion judge's denial. In contrast to the court's conclusion in Hallinan, 491 Mass. at 750-751, here the motion judge concluded: (1) that the evidence against the defendant was "overwhelming" and (2) that "the plea was strategically effective for the defendant." Both conclusions were well grounded in the facts, and together, they support the determination that the defendant did not demonstrate a reasonable probability that he would not have admitted to sufficient facts or pleaded guilty had he known of OAT's misconduct.

First, as noted above and unlike in Hallinan, 491 Mass. at 750-751, here the evidence of guilt was very powerful, not just on the OUI charge but on the other charges as well. Cf. id. at 733 ("To establish OUI, the Commonwealth may proceed on a theory of impairment [impaired ability to operate] or on a theory of a per se violation [operating with a (blood alcohol content) of 0.08 percent or greater]"). In Hallinan, supra at 750, aside from the breath test result, the evidence of impairment was based on what the court described as "a fairly brief interaction between [Hallinan] and the troopers and her statement that she

had had three drinks."  Here, in contrast, the defendant had been involved in a very serious accident (his car was undriveable), with no physical evidence that any other vehicle was involved.  The responding officer was unable to perform field sobriety tests because the defendant, on being asked to perform the tests, charged at and pushed the officer.  Indeed, the defendant's continuous aggressive and irrational behavior was evidence of the defendant's impairment.  The defendant yelled at the officer, including stating that he was going to change a tire despite the axle being completely broken.  And the defendant continued his bizarre and aggressive behavior during his transit to the police station and booking, which included making several graphic and detailed threats against the responding officer and his family.

Moreover, the defendant was unsteady on his feet, had slurred speech, and had glassy and bloodshot eyes.  Throughout the interaction, a strong odor of alcohol emanated from the defendant.  All of this evidence is important to the first and third guiding factors in examining the prejudice prong under the Scott-Ferrara test -- in this case the breathalyzer evidence was not critical to the Commonwealth's case, but was cumulative of other, very strong evidence from which a jury could find that the defendant was intoxicated.  See Hallinan, 491 Mass. at 750.

Second, and perhaps more importantly, is that the defendant's plea, including his admission to the OUI charge, resulted in significant charge concessions that greatly benefitted the defendant (the fifth factor of the Scott-Ferrara test). See Hallinan, 491 Mass. at 750. Unlike in Hallinan, supra at 731, 751, here the Commonwealth dismissed three additional charges when the defendant offered to admit to sufficient facts supporting a conviction of OUI -- assault and battery on a police officer, negligent operation of a motor vehicle, and disorderly conduct. These charges carried significant potential penalties. The charge of assault and battery on a police officer carried a minimum sentence of ninety days' imprisonment with a maximum of two and one-half years, see G. L. c. 265, § 13D, and the charge of negligent operation carried a minimum sentence of two weeks' imprisonment, with a maximum of two years along with a sixty-day license suspension, see G. L. c. 90, § 24 (2) (a), (c). The evidence as to these charges was also very strong (and unaffected by any issues as to the breathalyzer evidence), and either charge could have resulted in jail time, which the defendant initially avoided through his pleas and admission. Additionally, here, the defendant's license was suspended for forty-five days, considerably less than the two-year suspension in Hallinan, supra at 731, 752.

13

In short, the evidence against the defendant here was considerably stronger than in Hallinan (including on the non-OUI charges), and the defendant here received a significantly more beneficial plea disposition.  The motion judge, who was also the plea judge, properly weighed these factors in denying the defendant's motion, as it would not have been rational for the defendant to reject the plea deal and go to trial under the circumstances here.

The motion judge did not abuse his discretion in concluding that the defendant had not shown that "justice may not have been done."  Mass. R. Crim. P. 30 (b).

> Order denying motion to withdraw guilty pleas and admission to sufficient facts affirmed.
>
> By the Court (Green, C.J., Neyman & Englander, JJ.[5]),
>
> Anne M. Thomas
> Assistant Clerk

Entered:  February 29, 2024.

---

[5] The panelists are listed in order of seniority.